IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **J.L., et al.**,<br><br>    Plaintiffs,<br><br>    v.<br><br>**LOWER MERION SCHOOL DISTRICT**,<br><br>    Defendant. | **CIVIL ACTION**<br><br>**NO. 20-1416-KSM** |

MEMORANDUM

**MARSTON, J.**                                                                                                    September 17, 2021

In this case, Plaintiffs J.L. and F.L., individually and on behalf of their child A.L., and A.L., individually, allege that Defendant Lower Merion School District (the "District") failed to provide A.L. with a free appropriate public education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act, and state law, and that the District intentionally discriminated against A.L. in violation of the Americans with Disabilities Act ("ADA") and Section 504.  (Doc. No. 33.)  Plaintiffs' IDEA, Section 504, and state law claims were initially considered and rejected by a hearing officer with the Pennsylvania Department of Education; Plaintiffs appealed that rejection to this Court.  (*See id.*)  Presently before the Court is Plaintiffs' Motion to Supplement the Administrative Record.  (Doc. No. 38.)  For the reasons that are discussed below, the Court will grant Plaintiffs' Motion in part and deny it in part.

I.

Because we write primarily for the parties, we include only limited background information.  A fuller discussion of this case's facts and procedural history may be found in the

1

Court's prior opinion in this matter. *See J.L. v. Lower Merion Sch. Dist.*, Civil Action No. 20-1416-KSM, 2021 WL 949456, at *1–4 (E.D. Pa. Mar. 12, 2021).

A.L., now twenty years old, is non-verbal and began communicating using a letterboard[1] and communication support person in the summer of 2017, just before entering eleventh grade. (Doc. No. 33 at ¶¶ 6, 58–62.)  However, despite his desire to use the letterboard "throughout the school day" and his parents' repeated requests throughout mid- to late-2017 that the District incorporate the letterboard into his individualized education program ("IEP") and train District staff on how to use it, the District did not change A.L.'s IEP.  (*Id.* at ¶¶ 69–76.)

This touched off a long-running dispute between Plaintiffs and the District regarding whether A.L. would be allowed to use the letterboard at school, whether school officials would be trained on how to use the letterboard to communicate with A.L., and whether the District was properly evaluating A.L.'s abilities.  (*E.g.*, *id.* at ¶¶ 76–100.)  In January 2018, the District agreed A.L. could use the letterboard in his reading support class, yet failed to train school staff on how to use it.  (*Id.* at ¶ 85.)  Then, in April, the District initially agreed to train to certain personnel, but not A.L.'s one-to-one aide.  (*Id.* at ¶ 90.)  The District ultimately cancelled the scheduled training.[2]  (*Id.*)

By November of 2018, based on advice from A.L.'s treating psychiatrist, A.L.'s parents

---

[1] A letterboard is "a laminate alphabet board held by a communication support person"; A.L. "points with his index finger to letters" on the board to communicate. (Doc. No. 33 at ¶ 2.)  Several medical and educational professionals have concluded that the letterboard is an effective means for A.L. to communicate. (*See id.* at ¶¶ 10–14, 17.)

[2] At one point the District agreed that A.L.'s parent could act as A.L.'s communication support person, but then the District changed its' position. (*Id.* at ¶¶ 91–92.)  The District eventually did a three-day preliminary training on how to use the letterboard in September 2018, but again excluded A.L.'s one-on-one aide from the training. (*Id.* at ¶ 93.)  Following the training, the District prohibited A.L.'s use of the letterboard for standardized evaluations, stating that research did not support "its effectiveness in the school setting." (*Id.* at ¶ 95.)

withdrew A.L. from school because of the District's refusal to allow A.L. to use a letterboard—his alleged effective means of communication.[3] (*See id.* at ¶¶ 101, 105.)  A.L.'s parents were concerned that A.L.'s mental and physical health would be harmed if he were forced to attend school without a letterboard. (*Id.* at ¶¶ 108–09.)  At that time, A.L.'s parents informed the District that "they would seek reimbursement from the District for the cost of appropriate educational programming for" A.L. (*Id.* at ¶¶ 100–02.)

In December of 2018, after several false starts and broken promises, the District issued a revised IEP for A.L. and agreed to allow A.L. to use a letterboard and a communication support person at school "as a reasonable accommodation under [the] ADA," but refused to fund a communication support person. (*Id.* at ¶¶ 105–07.)  This revised IEP and proposed ADA accommodation proved to be too little, too late.  A.L.'s parents, who remained concerned about A.L.'s mental health and believed the IEP to be insufficient, elected to homeschool A.L. (*Id.* at ¶¶ 106, 108–13.)

On February 27, 2019, Plaintiffs filed a due process complaint with the Pennsylvania Department of Education seeking compensatory education, reimbursement for their expenses in privately educating A.L., and reimbursement for A.L.'s private psychologist's evaluation. (*Id.* at ¶ 39; *see also* Doc. No. 13-3 at p. 3.)  Plaintiffs also alleged that the District discriminated against A.L. in violation of Section 504 and the ADA.[4] (Doc. No. 33 at ¶ 39; *see also* Doc. No.

---

[3] Prior to November the District requested permission to evaluate A.L. (*Id.* at ¶ 96.)  A.L.'s parents agreed. (*Id.* at ¶ 97.)  Although the parents requested that the District's psychologist also speak with A.L.'s private clinicians (his psychiatrist and developmental pediatrician) as part of this evaluation, no contact was made with those clinicians. (*Id.* at ¶ 97–100.)  Even after the District was notified of A.L.'s increased anxiety and provided with a letter from A.L.'s treating psychiatrist about his mental state, the District still did not follow up with A.L's clinicians. (*Id.* at ¶¶ 100–01.)

[4] Plaintiffs argued that the hearing officer did not have jurisdiction over their ADA claim. (*See* Doc. No. 13-3 at pp. 31–32.)

13-3 at p. 3.)  On December 15, 2019, the hearing officer ruled against Plaintiffs on all of their claims, concluding that the District had provided A.L. a FAPE, had not discriminated against A.L., and—assuming that he had jurisdiction over Plaintiffs' ADA claim—had not violated the ADA.  (Doc. No. 13-3 at pp. 4, 25, 28–34.)

Unsatisfied with the hearing officer's decision, Plaintiffs filed their Complaint in this Court on March 12, 2020.  (Doc. No. 1.)  In their Complaint, Plaintiffs sought review of the hearing officer's decision and brought a separate claim against the District for discriminating against A.L. in violation of the ADA.  (*Id.* at ¶¶ 114–52.)  This Court previously concluded that Plaintiffs' ADA claim was subsumed in the administrative appeal, but gave Plaintiffs the opportunity to amend their Complaint.  *J.L.*, 2021 WL 949456, at *6–10.

Plaintiffs subsequently filed an Amended Complaint in which they raised a revised ADA discrimination claim that differed in material respects from their original ADA claim.  (Doc. No. 33.)  After the District filed its Answer (Doc. No. 34), the Court issued a Scheduling Order (Doc. No. 36).  Under the Scheduling Order, this case is proceeding on two tracks, with different schedules governing Plaintiffs' administrative appeal and ADA claim.  (*See id.* at pp. 1–2.)

Pursuant to the administrative appeal's Scheduling Order, Plaintiffs filed their Motion to Supplement the Administrative Record on May 14, 2021.  (Doc. No. 38.)  They move to supplement the record with three categories of evidence:  (1) testimony from A.L., (2) videos of A.L. using a letterboard to communicate, and (3) a peer-reviewed study discussing whether letterboards are an effective means of communication for non-verbal young people.  (Doc. No. 38-1 at p. 4.)  Defendants opposed this Motion on May 28, 2021.  (Doc. No. 41.)  On July 29, 2021, the Court held oral argument.

II.

A court considering an appeal of a hearing officer's IDEA decision "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii).  Despite the statute's seemingly mandatory construction, however, the Third Circuit has explained that "the question of what additional evidence to admit in an IDEA judicial review proceeding . . . [is] left to the discretion of the trial court." *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995).  In making this determination, courts "must evaluate a party's proffered evidence before deciding to exclude it." *Id.* at 759.  To evaluate whether the proffered evidence should be allowed, courts consider whether the evidence is "'relevant, non-cumulative and useful' in determining whether a child's program is in compliance with the IDEA." *M.C. ex rel. Conyers v. Sch. Dist. of Phila.*, 393 F. Supp. 3d 412, 415 (E.D. Pa. 2019) (quoting *Susan N.*, 70 F.3d at 760).  This analysis should be tailored to the specific facts and claims that are before the Court.  *See Antoine M. v. Chester Upland Sch. Dist.*, 420 F. Supp. 2d 396, 402 (E.D. Pa. 2006).

"While parties are required to exhaust their claims, they need not exhaust their evidence; they may present new evidence to the Court that could have been presented to the hearing officer but was not." *J.L.*, 2021 WL 949456, at *10 (citing *M.C.*, 393 F. Supp. 3d at 417).  The Court may consider four factors in deciding whether to admit additional evidence:  (1) whether the parties were procedurally barred from introducing the evidence at the administrative hearing; (2) "whether the party seeking admission of the evidence deliberately withheld it at the hearing for strategic reasons"; (3) whether introducing the additional evidence would prejudice the non-proffering party; and (4) "the potential impact of the admission of the evidence on the administration of justice, that is, whether the party seeks to introduce not just new evidence but a new legal theory unrelated to the legal theory presented at the due process hearing." *K.D. v.*

*Downington Area Sch. Dist.*, Civil Action No. 16-0165, 2016 WL 4502349, at *1 (E.D. Pa. Aug. 29, 2016).

III.

As noted above, Plaintiffs ask the Court to supplement the Administrative Record with three categories of evidence: (A) A.L.'s testimony, (B) videos of A.L. using his letterboard, and (C) a peer-reviewed study regarding the effectiveness of letterboarding as a means of communication. (Doc. No. 38-1 at p. 4.) The Court addresses each category of evidence in turn.

A.

Plaintiffs ask the Court to supplement the administrative record with A.L.'s testimony. (Doc. No. 38-1 at p. 9.) Plaintiffs proffer that A.L. would testify, among other things, about his experiences at school, his needs, his ability to communicate using the letterboard, and his desire to interact with his peers. (*Id.*) Plaintiffs argue that this testimony is essential to determining whether A.L. was provided a FAPE, and that the hearing officer erred by refusing to allow A.L. to testify using a letterboard.[5] (*Id.* at p. 6.)

The District opposes supplementing the administrative record with A.L.'s testimony, arguing that Plaintiffs chose not to call A.L. at the administrative hearing for "strategic reasons." (Doc. No. 41 at pp. 5–6.) The District contends that Plaintiffs have not provided a valid justification for their failure to call A.L. at the administrative hearing. (*Id.* at pp. 6–7.) Also, the

---

[5] At the due process hearing, the District moved to preclude Plaintiffs from calling A.L. as a witness, arguing that A.L. "is both incompetent, because he has a tested IQ over time in the second to third percentile. He also would be testifying, as [the District] understood it, using an unproven and unreliable, invalid methodology, which is called Spelling to Communicate, which is the issue of the case that would further render his testimony unreliable." (Doc. No. 41 at p. 5.) The hearing officer ultimately denied the District's motion to preclude Plaintiffs from calling A.L. as a witness, but granted the portion of the motion pertaining to the Spelling to Communicate methodology. (*Id.*) Plaintiffs filed a motion to reconsider the hearing officer's decision, which was denied. (*Id.*) Plaintiffs then chose not to call A.L. as a witness. (*Id.*)

6

District argues that Plaintiffs' real purpose in offering A.L.'s testimony now is to bamboozle the Court—who the District avows is a non-expert in communication—into believing that letterboarding is an effective means of communication.  (*Id.* at p. 7.)  None of these arguments are persuasive.

The District's first argument, that the Court should not allow A.L.'s testimony because it was deliberately withheld at the administrative hearing for strategic reasons, fails because it ignores Plaintiffs' non-strategic reasons for not offering A.L.'s testimony.  Courts that have assessed whether a party withheld evidence at the administrative hearing for strategic reasons have focused on the party's stated justification for not presenting the evidence.  For instance, in *F.D. ex rel. K.D. v. Holland Township Board of Education*, the court denied supplementation where the plaintiffs withheld testimony "due to time management issues, cost issues," and because they believed they would be successful even without offering additional evidence.  Civil Action No.:05-5237 (AET), 2006 WL 2482574, at *6 (D.N.J. Aug. 25, 2006); *see also Springer v. Fairfax Cnty. Sch. Bd.*, 134 F.3d 659, 667 (4th Cir. 1998) (holding that where the plaintiffs "made the tactical decision to reserve the expense—and the impact—of [an expert's] live testimony," were the court "to allow these litigants to escape the consequences of a litigation strategy gone awry, [it] would invite future litigants to engage in strategic behavior that may not be so innocent").

Here, there is no indication that Plaintiffs withheld A.L.'s testimony from the administrative hearing for strategic reasons.  It is true, as the District argues (Doc. No. 41 at 5–6), that the hearing officer offered to hear A.L.'s testimony (but only if it was delivered *without* a letterboard (Doc. No. 13-5 at pp. 6–7)), and that in his decision he ruled that A.L. is capable of communicating using other means, such as "some speaking, typing, pointing and identifying

7

pictures" (Doc. No. 13-3 at p. 17).  The Court recognizes the District's argument that if A.L. testified without the letterboard it would be counterproductive to Plaintiffs' argument that A.L. needs a letterboard during the school day, and therefore, Plaintiffs had a strategic reason for withholding the testimony.  (Doc. No. 41 at p. 6.)  However, Plaintiffs contend that the practical effect of the hearing officer's decision was the exclusion of A.L.'s testimony.  (*See, e.g.*, Doc. No. 38-1 at p. 11.)

Plaintiffs have a basis for this belief considering A.L.'s parents' previous concerns regarding A.L.'s mental and physical health if A.L. is forced to communicate without a letterboard.  (*See, e.g.*, Doc. No. 33 at ¶ 108.)  Plaintiffs have consistently advanced the argument that using a letterboard and a communication partner is A.L.'s "preferred and effective communication technique."  (Doc. No. 13-5 at p. 6; *see also* Doc. No. 33 at ¶ 10 ("The letterboard is [A.L.]'s effective and preferred communication.").)  Although at this time the Court takes no position as to whether Plaintiffs are correct, it notes that they have, at minimum, a reasonable basis for their belief.  Among other things, A.L.'s treating psychiatrist opined in November of 2018 that without access to his letterboard at school, A.L. was left "without an effective way to communicate."  (Doc. No. 33 at ¶ 101.)  As such, the Court is not convinced that Plaintiffs' decision not to call A.L. at the administrative hearing was for "strategic reasons."

The District's second argument, that Plaintiffs failed to "offer . . . argument to justify their refusal to call [A.L.] to testify" at the administrative hearing, is similarly unpersuasive.  (*Id.* at pp. 6–7.)  The Third Circuit "has not adopted any threshold requirement that a party first show cause for failing to proffer testimony in the administrative hearing."  *M.C.*, 393 F. Supp. 3d at 419–20.  Though not required to, as explained above, Plaintiffs have adequately explained why A.L. did not testify at the administrative hearing; neither their explanation nor the record

8

suggests "strategic manipulation of the hearing process." *Id.* at 418.

The District's final argument, that Plaintiffs' reason for offering A.L.'s testimony is to try to trick the Court into ignoring its duties because of a compelling witness, likewise fails. The Court is fully aware that it "is not trained to act as an evaluator of communication methodologies." (Doc. No. 41 at p. 7.) That the Court is not a subject-matter expert is, however, a non sequitur. From the earliest days of the Republic, federal trial judges have been trusted to hear testimony and draw factual conclusions based upon it. *See Wiscart v. D'Auchy*, 3 U.S. (3 Dall.) 321, 324 (1796). The fact that the Court is not an expert on communication techniques does not prevent it from closely examining A.L.'s testimony for indicia of reliability, such as the relationship between his testimony and other evidence, whether his answers to questions are responsive, evasive, or incoherent, and whether he is candid about facts that harm his case. *See, e.g.*, *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999); *Martinez v. Ylst*, 951 F.3d 1153, 1157 (9th Cir. 1991); *United States v. Greene*, No. 15-CR-15, 2017 WL 2180354, at *3 (M.D. Pa. May 18, 2017). Moreover, the Court is mindful of the standards that apply to administrative appeals, and in particular of the deference it owes to the hearing officer's factual determinations. The Court will not abandon those standards.

The Court's conclusion that A.L.'s testimony should be allowed is bolstered by the fact that the testimony will be subject to cross examination. One factor the Third Circuit examines in evaluating whether a district court abused its discretion in allowing supplementation of the administrative record is whether the opposing party will be able to refute the proffered evidence. *See A. H. ex rel. K. P. v. Colonial Sch. Dist.*, 779 F. App'x 90, 93 (3d Cir. 2019); *see also H.G. ex rel. Davis v. Upper Dublin Sch. Dist.*, No. Civ. A. 13-1976, 2015 WL 1808538, at *20 (E.D. Pa. Apr. 17, 2015). For instance, in *A. H.*, a Third Circuit panel concluded that the district court

acted permissibly in refusing to allow the plaintiffs to supplement the administrative record with an expert witness's report that was "cumulative" of the expert's testimony at the administrative hearing and "would bolster [her] testimony" without allowing the defendant school district the ability "to rebut its substance." *A. H.*, 779 F. App'x at 93–94.  Here, A.L.'s testimony will be subject to cross examination, providing the District with an opportunity to rebut it.

The Court is aware of the fact that the method of eliciting A.L.'s testimony—asking him questions to which he will respond using a letterboard and a communication support person—is the very method of communication that is at issue in this administrative appeal.  These considerations will bear on the weight the Court assigns to A.L.'s testimony.  But while the hearing officer refused to consider A.L.'s testimony if delivered via a letterboard out of a fear that doing so would imply that the method of communication at issue is valid (*see* Doc. No. 13-5 at p. 5), the inverse is also true:  excluding testimony given using the method of communication at issue would impliedly rule that the method is *invalid*.  Under such circumstances, the Court finds that the most prudent course of action is to consider more evidence, not less.

For these reasons, Plaintiffs may supplement the administrative record with A.L.'s testimony, using a letterboard, A.L.'s preferred method of communication.

B.

During the administrative hearing, the hearing officer excluded fourteen videos that Plaintiffs sought to introduce.  (Doc. No. 38-1 at p. 9.)  Plaintiffs now seek to supplement the administrative record with four of these videos.  (*Id.*)  Plaintiffs assert that these four videos show A.L. using a letterboard to perform a variety of tasks, such as doing history homework, working with a math tutor, and composing a letter to the District.  (*Id.* at pp. 12–13; *see also* Doc. No. 38-2 at pp. 8–9.)  Plaintiffs argue that these videos were improperly excluded by the

hearing officer, and that they are relevant because they show A.L.'s abilities and were provided to the District at the time A.L.'s parents were requesting updates to A.L.'s IEP. (Doc. No. 38-1 at pp. 12–13.)

The District opposes using the videos to supplement the administrative record, arguing, as it did with respect to A.L.'s testimony, that Plaintiffs' "real objective [for introducing the videos] is to sway the Court's opinion with a visual depiction so compelling that it will be willing to second guess the Hearing Officer's factual findings." (Doc. No. 41 at p. 9.) The District argues that the videos should not be admitted because they are duplicative of "hours of testimony" about A.L.'s ability to use the letterboard to communicate during the administrative hearing, including some testimony about three of the four proffered videos. (*Id.* at pp. 8–9.) Additionally, the District says that the Court should not consider the videos because they have "already been described" in prior testimony and the Court would be viewing them "without any context of what is or is not significant." (*Id.* at p. 9.)

The Court notes initially a seeming contradiction in the District's argument: According to the District, three of the four videos were described in testimony at the administrative hearing, yet the Court should not view them because it would not have any context for understanding them. Reviewing the portions of the hearing transcript the District cites, it appears that the three videos were described only in cursory terms; as they were excluded by the hearing officer, they were not discussed in detail. (*E.g.*, Doc. No. 13-5 at p. 53; Doc. No. 13-6 at pp. 10–11, 33.) Thus, the question the Court must answer is: Would the videos present only duplicative evidence, given that they show A.L. using the letterboard, a communication technique about which the hearing officer heard extensive testimony?

In *G.R. ex rel. Miramontes v. Del Mar Union School District*, the Southern District of

California was presented with a similar question. *See* Case No. 3:19-cv-0132-AJB-MSB, 2019 WL 3817959, at *1–2 (S.D. Cal. Aug. 14, 2019). In that case, the defendant school district sought to supplement the administrative record with videos of the district's psychologist in which she discussed her observations of the plaintiff student and her assessment of his educational needs. *Id.* at *1. On the plaintiff's objection, the hearing officer excluded the videos, finding that they were irrelevant, incomplete, and cumulative. *Id.* The Southern District ruled that the defendant school district would be allowed to supplement the administrative record with the videos, reasoning that it would be beneficial for the court to consider all of the evidence the hearing officer had considered, and opining that "the Court cannot determine whether the ALJ improperly excluded the evidence without being able to consider it." *Id.* at *2. However, the court cautioned the parties that it would "give appropriate deference to the [hearing officer's] findings regarding the video's cumulative effects and potential for prejudice." *Id.*

Similar principles govern here. The Court must consider the videos in order to determine whether the hearing officer properly excluded them, especially in light of the fact these videos were provided to the District at the time A.L.'s parents were requesting that the District allow A.L. to use a letterboard. Again, the Court will give proper deference to the hearing officer's findings.

For these reasons, Plaintiffs will be allowed to supplement the administrative record with the four videos.

C.

Finally, Plaintiffs wish to include a peer-reviewed study which discusses autistic persons' use of letterboards to communicate.[6] The authors of this study concluded that nonspeaking

---

[6] This study, which is included as an exhibit to Plaintiffs' Motion to Supplement the Administrative Record (*see* Doc. No. 38-2 at pp. 14–23), is Vikram K. Jaswal, Allison Wayne & Hudson Golino, *Eye-*

autistic people who are experienced letterboard users, spell rapidly, and can have their vision tracked are conveying their own thoughts when they communicate using a letterboard, not responding to cues from their communication partner.  (Doc. No. 38-2 at p. 20.)  Plaintiffs argue that this "study is relevant, non-cumulative and useful" to determining whether A.L. received a FAPE because it "refutes the District's blanket argument that [A.L.'s] communication with a letter board was not and is not his own thoughts and words."  (Doc. No. 38-1 at p. 14.)

The District opposes supplementing the administrative record with the study on three grounds.  First, it says that the study is irrelevant because it came out after the hearing officer's decision, and that "at the time the District acted and at the time of the Hearing Officer [sic] decision, there was no research to support the validity or reliability or [sic] the letter board methodology."  (*See* Doc. No. 41 at p. 10.)  Second, the District argues that the study drew inappropriate conclusions because it failed to exclude certain independent variables.  (*See id.*)  Finally, the District contends that it would be inappropriate for the Court to consider the study without the assistance of expert testimony.  (*See id.* at pp. 10–11.)

The question the Court must consider with respect to Plaintiffs' appeal of the hearing officer's decision is whether it was "clear error" for him to conclude that the District fulfilled its

---

*Tracking Reveals Agency in Assisted Autistic Communication*, 10 SCI. REPS. 7882 (2020) (available at https://doi.org/10.1038/s41598-020-64553-9).  The Court notes that Plaintiffs overstate certain aspects of this study.  Specifically, Plaintiffs aver that the study was published in "the highly prestigious journal, *Nature*."  (Doc. No. 38-1 at p. 13.)  It is true that *Nature*, which engages in a "rigorous" selection process designed to ensure that it publishes only papers "of outstanding scientific importance" that "reach a conclusion of interest to an interdisciplinary readership," *see Editorial Criteria and Processes*, NATURE, https://www.nature.com/nature/for-authors/editorial-criteria-and-processes (last accessed June 9, 2021), is highly prestigious.  However, the study at issue was not published in *Nature*.  Rather, it was published in *Scientific Reports*, a separate journal published by Nature Research—the company that publishes *Nature*—which publishes papers it and peer reviewers deem "scientifically valid and technically sound in methodology and analysis" regardless of the papers' "perceived importance, significance or impact."  *Guide for Referees: Criteria for Publication*, SCI. REPS., https://www.nature.com/srep/guide-to-referees#criteria (last accessed June 9, 2021).  Because of its more exacting standards, publication in *Nature* is considered more prestigious than publication in *Scientific Reports*.

FAPE obligations. *E.g.*, *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009). It is axiomatic that the hearing officer cannot have erred in not considering evidence that did not exist at the time he issued his decision. As Plaintiffs concede, the study "was published after the administrative hearing and was therefore not available during it." (Doc. No. 38-1 at p. 5.) Because the study was published after the hearing officer issued his decision, it is irrelevant to the Court's assessment of whether the hearing officer erred in concluding that A.L. received a FAPE from the District, and the Court will not consider it as it evaluates Plaintiffs' administrative appeal.[7]

IV.

For these reasons, the Court exercises its discretion and grants Plaintiff's Motion to Supplement the Administrative Record with respect to A.L.'s testimony and the videos of A.L. using a letterboard, and denies it with respect to the peer-reviewed study.

An appropriate Order follows.

---

[7] The Court takes no position as to whether the study is admissible as evidence with respect to Plaintiffs' ADA claim, which is proceeding as an independent claim filed originally in this Court—not as an administrative appeal.