**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

——————

No. 22-2931

——————

JENNIFER BINDER LE PAPE and FREDERIC LE PAPE,
Individually and on behalf of Alexandre Le Pape;
ALEXANDRE LE PAPE, Individually,

Appellants

v.

LOWER MERION SCHOOL DISTRICT

\*(Amended pursuant to Clerk's Order dated November
28, 2022)

——————————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-20-cv-01416)
District Judge:  Honorable Karen S. Marston

——————————————

Argued January 18, 2024

Before: JORDAN, BIBAS, and AMBRO, <u>Circuit Judges</u>

(Opinion filed June 4, 2024)

Nicole M. Reimann (Argued)
Batchis Nestle & Reimann
7 Bala Avenue
Suite 202
Bala Cynwyd, PA 19004

           Counsel for Appellants

Amy T. Brooks
Michael D. Kristofco (Argued)
Christina Gallagher
Wisler Pearlstine
460 Norristown Road
Suite 110
Blue Bell, PA 19422

           Counsel for Appellee

Peter D. Keisler
Virginia A. Seitz
1501 K Street NW
Sidley Austin
Washington, DC 20005

           Counsel for Amicus Appellant
           Communication First

Selene A. Almazan-Altobelli
Council of Parent Attorneys and Advocates
P.O. Box 6767
Towson, MD 21285

       Counsel for Amicus Appellant Council of
       Parent Attorneys and Advocates

_____

OPINION OF THE COURT

_____

AMBRO, <u>Circuit Judge</u>

     Non-verbal student Alexandre Le Pape ("Alex") and his family (collectively, the "Le Papes") repeatedly requested that the Lower Merion School District (the "School District" or "District") change his educational program to include a new communication protocol. After it denied these requests and Alex left public education, the Le Papes filed an administrative special education due process complaint against the School District seeking compensatory education, reimbursement for tuition and services in the home, and the award of attorney fees and costs. The family alleged that the District failed to protect Alex's rights and denied him a Free Accessible Public Education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*; and Chapters 14 and 15 of the Pennsylvania Code, 22 Pa. Code Chs. 14-15.

3

An impartial administrative hearing officer ruled against them on all claims, and they filed suit in the United States District Court for the Eastern District of Pennsylvania. In Count I of their complaint, the Le Papes alleged that the District failed to provide a FAPE in violation of the IDEA, Section 504, and state law; they sought compensatory education, reimbursement for the private program they developed for Alex following his withdrawal from the District, and reimbursement for the psychological evaluation of him that they coordinated. Counts II and III, seeking compensatory damages and a jury trial, alleged the District intentionally discriminated against Alex in violation of Section 504 and the ADA.

The District Court granted the School District's motions for summary judgment on the ADA claim and judgment on the administrative record for the denial-of-FAPE claims, in effect rolling together their ADA and Section 504 claims with their IDEA claim. The Le Papes now appeal the Court's grant of summary judgment for the District on their ADA claim and of judgment on the administrative record for the District on their ADA and Section 504 claims.[1] Because the Court granted judgment on them without applying the summary judgment standard to which the Le Papes were entitled under Federal Rule of Civil Procedure 56, we reverse and remand.

I.   BACKGROUND

---

[1] They do not appeal the Court's treatment of their denial-of-FAPE claims under the IDEA, Section 504, and state law.

a. Factual Background

Alex, who is now twenty-three years old, was formerly a student in the School District. Diagnosed with autism and speech-language impairment, he describes himself as a "non-speaker." Le Papes' Br. at 5. He was eligible for special education services under the IDEA categories of Autism, Intellectual Disability, and Speech and Language Impairment. During his time in the District, Alex used a Bluetooth keyboard and iPad, in addition to visual scripts, pointing, and identifying pictures. With these, he could communicate simple things like requests for food or to go to the restroom or the school nurse.

In July 2017, when Alex was 16, his family learned about a technique known as "Spelling to Communicate" ("S2C"), in which a non-speaker points at letters on a laminated alphabet board ("letter board") held by a communication support person. That summer, his family sent the School District videos illustrating the technique. They requested that representatives from the District observe Alex using S2C, but it declined, telling Mrs. Le Pape that the technique was not evidence based. She concedes that there was then no published research to support the method (nor would there be until 2019). In the fall of 2017, she nonetheless sent another email requesting the District to reconsider its decision and make changes to Alex's Individualized Education Plan ("IEP"), including provision for training District personnel in S2C. Shortly thereafter, the District team assigned to Alex revised his IEP to acknowledge her request, but not to implement it. On December 10, Mrs. Le Pape again emailed the District requesting changes to his IEP, including training for S2C and to have a person trained in the method "work with Alex at school all day, every day." App. at 541.

5

Later that month, the School District finally agreed to observe Alex at an S2C training session, and on December 28 two special education specialists from the District observed him and his communication partner, Emily. The specialists had reservations about the method and shared with the IEP team that they needed to observe the protocol again, this time with Alex's teacher present. They also spoke with Elizabeth Voseller, the inventor of S2C, as well as a practitioner trained by her. After those conversations, the District's special education supervisor for Grades 10-12 emailed her supervisor on January 15, 2018, stating that "[a]fter those two phone calls, Denise [the District's Speech and Language Department Coordinator and Assistive Technology Coordinator for grades K to 12] and I seem to have more questions than answers." App. at 3787. The supervisor outlined various concerns, including the lack of evidence for S2C, its similarity to the Rapid Prompt Method that various studies had called into question, that the American Speech-Language-Hearing Association ("ASHA") did not recognize S2C as an evidence-based protocol, the lack of individuals communicating independently using S2C, and that Alex did not, at that time, use S2C at home except to complete homework. The special education supervisor then reiterated the need to observe Alex again, this time with his teacher, and recommended that the District purchase letter boards and use them in reading class to collect more data.

As the special education supervisor suggested, the District specialists and Alex's teacher, Ms. Van Horn, conducted a second observation of Alex using S2C in late January 2018, with the specialists viewing Alex, Emily, and his teacher from a remote monitor in a separate room. During this

6

session, Emily and Alex went through review questions for Alex's U.S. History midterm. Initially, Emily did not have the answer key, and Alex was not answering correctly; but once it was provided to Emily, he started answering correctly. This troubled Alex's teacher as well as the specialists. After the observation, the specialists asked Mrs. Le Pape more questions about S2C and proposed obtaining letter boards and running a trial in the classroom.

In February, the School District accepted the mother's offer to visit Alex's classroom and show his teacher how to use S2C. From then on, Alex would bring his letter board to school every day and take it home with him. At the same time, however, the District advised the Le Papes that, "as we have shared with you, the reservations regarding training staff center around our belief that we have highly trained staff who have expertise and background to successfully utilize this tool. The lack of research behind S2C[,] including research to drive appropriate training with fidelity[,] remains a significant concern for the [D]istrict." App. at 549. Mrs. Le Pape took this to mean District staff wished to see research on S2C as well as a protocol for how to use it.

In March, Mrs. Le Pape came into the classroom of Alex's teacher several times to demonstrate the use of S2C, with a special education specialist from the School District present. His teacher had limited success attempting to use the technique with Alex. Mrs. Le Pape conceded that these trials were not successful, which she ascribed to the teacher's lack of training.

In April, the School District revised Alex's IEP, agreeing for staff to train for use of S2C. Mrs. Le Pape was

7

still dissatisfied with this, and in mid-July emailed the District requesting that his IEP be revised yet again, this time to incorporate the use of S2C with a trained partner, including in Alex's extracurricular activities. It responded that, "[a]s we discussed at the start of the summer, we are training for trial. Our team needs the opportunity to go through the training and then to make the most informed recommendations going forward." App. at 557. On August 3, the District emailed the Le Papes, stating that "[w]hile we have agreed to train in S2C for the purposes of trial, please remember that the District has significant and valid concerns with this method as it lacks research to support its use." App. at 4050.

That said, the training nonetheless took place over three days at the end of September 2018, with participation by the two special education specialists from the School District, two of Alex's teachers, and a certified school psychologist. Alex's teacher, Mr. Borsch, complained that the training was "kind of all over the place" and that S2C was not a communication tool but instead "[other people] prompting [Alex] to the right answer." App. at 2162-63. The school psychologist raised multiple concerns about the method, including the lack of data for it, the need for an explanation why the letter board couldn't be on a fixed structure, and the trainer's use of the phrase "in the neighborhood" when describing when an individual's response was close enough on the letter board to where the correct response would be. App. at 563-64.

Over this time, Alex experienced an increase in self-injurious and aggressive behaviors, including biting his hands and pulling others' hair. His treating psychiatrist ascribed these behaviors to an increase in anxiety due to his inability to use the letter board in school. In the fall of 2018, she recommended

8

that Alex not return to school until the School District accommodated his use of the letter board and developed a plan to transition him back into classroom learning. Citing his increased anxiety, Alex's parents removed him from school on October 25.

On November 28, the School District team assigned to Alex met for the final time and announced that it would not incorporate S2C into Alex's program. Mrs. Le Pape later testified that the District raised concerns about the recent statement of the ASHA that S2C was not evidence based and "not recommended," App. at 4755, as well as its dissatisfaction with the training.

Once Alex had been out of school for six weeks, however, the School District revised his IEP to indicate that if he brought his own letter board and communication partner to school, it would allow him to use both as a reasonable accommodation. It still refused to provide its own communication support person. On December 21, Alex's parents rejected the proposed IEP revisions, and Alex continued his education from home, where private tutors met with him and used S2C.

In total, Alex's family spent 17 months, spanning two school years, making at least 33 requests to his School District to allow him to use the letter board in school and to train staff to assist him in using it. At various times, his speech therapist, psychiatrist, and behavior analyst each wrote to the District stating that the letter board would be an effective means of communication for him.

b.  The Administrative Process

9

The Le Papes filed a due process complaint with the Pennsylvania Department of Education, Office of Dispute Resolution. They alleged that the School District failed to protect Alex's rights and denied him a FAPE under the IDEA, Section 504, Title II of the ADA, and state law. A hearing officer heard the complaint over three sessions; he did not allow Alex to testify using the letter board and excluded videos of him using it. In his final decision and order, the officer found that the School District did not deny Alex a FAPE under the IDEA, Section 504, and state law, and did not discriminate against him in violation of Section 504. He held that he did not have jurisdiction over the ADA discrimination claim, but that, if he did, he would hold that the Le Papes had not proven the District discriminated against Alex.

### c. The District Court Process

The Le Papes timely filed a complaint with the District Court. As noted above, in Count I of their complaint, filed on March 12, 2020, they alleged that the School District failed to provide a FAPE in violation of the IDEA, Section 504, and state law. In Counts II and III, they alleged the District intentionally discriminated against Alex in violation of the ADA and Section 504 by refusing to permit him to communicate with the letter board and failing to train staff so he could do so. The Le Papes sought compensatory damages and a jury trial on their intentional discrimination claims. In its answer to the Le Papes' intentional discrimination claims, the District did not assert either the fundamental alteration or

10

undue burden exception to the ADA's effective communication requirement.[2]  Nor did it move to strike the jury demand.

Following the conference under Federal Rule of Civil Procedure 16, the District Court *sua sponte* ordered briefing on whether the ADA claim was independent of the FAPE claim and how the resolution of that question should affect discovery and scheduling.  On March 12, 2021, the Court issued an order deciding the issue and concluding that the ADA claim was subsumed by the FAPE claim.

In arriving at that conclusion, the Court applied the framework from *Fry v. Napoleon Community Schools*, 580 U.S. 154, 170-71 (2017).  The Supreme Court there instructed that a plaintiff must exhaust his non-IDEA claim through an IDEA hearing only if the essential element ("gravamen") of the non-IDEA claim relates to the denial of a FAPE.  Applying that case, the District Court concluded that "the crux of [the Le Papes'] complaint remain[ed] the denial of a FAPE," App. at 165; so, under *Fry*, they were required to exhaust their ADA claim in an IDEA proceeding, which it concluded they did.

But the Court did not stop there.  It next held that "given [its] conclusion that the ADA claim [was] in essence a denial of a FAPE, [the Le Papes were] not entitled to a jury trial on

---

[2] The ADA "does not require a public entity to take any action that it can demonstrate would result [1] in a fundamental alteration in the nature of a service, program, or activity or [2] in undue financial and administrative burdens[,]" though it must still "ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity."  28 C.F.R. § 35.164.

11

Case 2:20-cv-01416-KSM    Document 107-1    Filed 07/22/24    Page 12 of 33

that claim." App. at 170. However, it gave them leave to amend "to the extent [they] are able to plead additional facts that may show that their ADA claim does not arise out of the District's alleged denial of a FAPE to [Alex]." App. at 172.

The Le Papes did so, filing an amended complaint alleging that the School District's refusal to permit Alex to communicate by means of the letter board and to train staff on its use denied him the equal opportunity to participate in and enjoy the benefits of guidance counseling services, school nurse services, extracurricular activities, academic programs, peer relationships, and off-campus activities. As before, the Le Papes sought money damages and demanded a jury trial, and as before, the District's answer did not assert the fundamental alteration or undue burden exceptions to the ADA's effective communication requirement, nor did it move to strike the jury demand.

On April 22, 2021, the District Court issued a Scheduling Order with "the case [] proceeding on two tracks": one for the administrative appeal and one for the discrimination claims. App. at 10. For the latter, the Court established deadlines for fact and expert discovery, summary judgment, *Daubert* and *in limine* motions, and pretrial memoranda. It also set a trial date. On the administrative appeal, it established deadlines for motions to supplement the administrative record and for judgment thereon.

The Le Papes duly began discovery on their discrimination claims. When they noticed a Fed. R. Civ. P. 30(b)(6) deposition of the School District, however, it resisted, and the Le Papes moved to compel. The District argued that they sought to "engage in garden style discovery of matters

12

which were exhausted during the due process hearing[,]" with "[v]irtually everything [they] want[ed] to inquire about in the 30(b)(6) deposition involv[ing] matters which were covered during the [] hearing." App. at 311. The Court granted the Le Papes' motion to compel, and the parties conducted discovery—including interrogatories, depositions, and expert discovery—over the summer of 2021.

In parallel, the Le Papes moved to supplement the administrative record on the administrative appeal with Alex's testimony, videos of him communicating by using the letter board, and peer-reviewed research published in May 2020 in support of S2C. The School District opposed the motion. On September 17, 2021, the District Court issued a memorandum opinion and order mostly granting the Le Papes' requests. It observed that, in their amended complaint, they "raised a revised ADA discrimination claim that differed in material respects from their original ADA claim." App. at 352. Therefore, it reiterated, this "set the case on two tracks because, if Plaintiffs stated claims for intentional discrimination unrelated to the denial of FAPE claim, they may have been entitled to a jury trial on those claims, whereas the administrative appeal was to be decided by the Court on the administrative record." App. at 40 n.12. As to the Le Papes' requests to supplement the record, the Court admitted Alex's testimony and videos of him using the letter board to communicate, but not the peer-reviewed study from 2020, stating that because the study was published after the conclusion of the administrative hearing, the hearing officer could not be faulted for failing to address it. However, "[t]he Court t[ook] no position as to whether the study [wa]s admissible as evidence with respect to Plaintiffs' ADA claim, which [wa]s proceeding as an independent claim filed

13

originally in th[at] Court—not as an administrative appeal." App. at 362 n.7.

The Le Papes moved for summary judgment on liability for the ADA claim, and the School District moved for summary judgment on the intentional discrimination claims under both Section 504 and the ADA. In addition to their cross-motions for summary judgment, the parties filed cross-motions for judgment on the administrative record as to the denial-of-FAPE claims.

For the summary judgment motions on the intentional discrimination claims, the Court denied the School District's motion on the Section 504 claim, stating that because "the hearing officer heard and denied that claim in the due process hearing," the Court would "address it in [its] decision on the parties' cross-motions for judgment on the administrative record." App. at 3 n.1. It then turned to the ADA claim, briefly reciting the relevant facts, including that "[e]ight medical and educational professionals ha[d] opined that [S2C] is an effective means of communication for [Alex]." App. at 4 n.3. However, the Court then reasoned that the ADA claim was subsumed by the IDEA denial-of-FAPE claim. "Because Plaintiffs' ADA claim seeks a remedy for denial of a FAPE," it concluded, "they are not entitled to a jury trial on that claim." App. at 19. It then granted the School District's motion for summary judgment on the ADA claim, holding that it would "consider the Plaintiffs' ADA claim, like their IDEA and Section 504 claims, on appeal from the hearing officer's decision." App. at 19. Though it denied summary judgment to the District on the Section 504 discrimination claim and granted it on the ADA discrimination claim, it did so with an

14

identical result: it would consider both claims as part of the administrative appeal.

Nine months later, it considered that appeal. In so doing, it "conduct[ed] a 'modified *de novo* review' of [the] hearing officer's decision" as to all claims, under which the hearing officer's factual findings were considered "*prima facie* correct." App. at 41; App. at 60-65.[3]

On the merits, the District Court affirmed the hearing officer's conclusion that the School District had not denied Alex a FAPE under any statute, finding that "[t]he record and

---

[3] The Supreme Court has held that when considering administrative appeals of IDEA claims, district courts should accord "due weight" to factual findings made in the administrative hearings required by that Act. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982). This standard, known as modified *de novo* review, "requires the court to consider the '[f]actual findings from the administrative proceedings . . . [to be] prima facie correct' and, if the court fails to adopt those findings, it must explain its reasons for departing from them." *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 241 (3d Cir. 2009) (quoting *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (internal citation omitted)). Our Circuit has not yet decided whether this standard of review applies to a district court's review of hearing officers' decisions regarding denial-of-FAPE claims under non-IDEA laws. *See T.F. v. Fox Chapel Area Sch. Dist.*, 589 F. App'x 594, 598 (3d Cir. 2014) (assuming *arguendo* that *de novo* review applies because it would affirm the Section 504 decision in either case). As discussed below, we decline to extend modified *de novo* review to such circumstances.

15

supplemental evidence support the [h]earing [o]fficer's conclusion that the District was not required to implement S2C because it was not an effective means of communication for [Alex]." App. at 54. In particular, the Court agreed that the District did not need to implement S2C because "hearing officers and parents are not permitted to second guess a school district's decision about which methodology to implement to address a disabled student's needs." App. at 52.

While the District Court agreed with the Le Papes that the hearing officer's credibility determinations were "sweeping and not necessarily supported by the testimonial evidence[,]" App. at 48, it concluded that it was "bound to adopt" them because "the non-testimonial evidence in the record demonstrates that S2C is not an effective means of communication for [Alex]." *Id.* It acknowledged his testimony—delivered using a letter board—that it was effective communication for him, as well as opinions from his clinicians in the administrative record; however, the Court concluded that these did not "outweigh the bulk of the evidence, which goes to the contrary." App. at 51. And though it did consider the videos of Alex answering questions correctly, it found that his "communication partners are, to some degree, guiding him to the correct answer, which suggests that S2C is not [Alex's] own voice and supports the District's decision not to implement the method." *Id.* The Le Papes argued that while *Ridley School District v. M.R.*, 680 F.3d 260 (3d Cir. 2012), does not require a school district to apply the disabled student's preferred method of communication if it can implement an alternative, effective method of communication, the letter board was Alex's *only* effective means of communication. The Court, however, rejected this contention, finding that "the record demonstrates

16

that [Alex] is a skilled typist." App. at 53. It did so without mentioning the testimony of Alex or his behavior specialist that he could merely type what others told him, nor did it note the additional opinions of the "[e]ight medical and educational professionals" the Le Papes later presented at summary judgment. App. at 4 n.3.

The District Court then turned to the Le Papes' ADA and Section 504 claims for intentional discrimination, observing that the "parties agree that . . . the only dispute is whether, by refusing to allow [Alex] to use S2C in school, the District denied [him] benefits of the program or otherwise subjected [him] to discrimination because of his disability." App. at 61. Because the Le Papes had only argued these claims on summary judgment, not the motions for judgment on the administrative record, the Court stated it would consider their arguments made on summary judgment "to the extent [they] are based on evidence available in the administrative record." App. at 61 n.19.

In this context, the Court did not acknowledge evidence developed through months of discovery, including the expert testimony and opinions it had referenced in its earlier ruling on summary judgment. It reasoned that it had already determined the intentional discrimination claims were denial-of-FAPE claims, and it had just rejected all of the latter claims, so, logically, "Plaintiffs [we]re not entitled to relief under Section 504 or the ADA." App. at 61-62. In the alternative, the Court concluded that even if these were not denial-of-FAPE claims, the Le Papes had failed to establish that Alex was discriminated against because they "ha[d] not adduced evidence to demonstrate the efficacy of the S2C method, particularly in light of the credible testimony of District staff who observed

17

[Alex] using the method and believed that [he] was being guided or prompted while using the methodology," App. at 64 n.20.  Moreover, "neither Section 504 nor the ADA requires schools to implement an unproven, ineffective means of communication, even if it is the student's preferred method." App. at 65.

The Le Papes timely appealed the District Court's grant of summary judgment for the School District on their ADA claim as well as the Court's entry of judgment on the administrative record for the District on both their ADA and Section 504 claims.[4]   Council of Parent Attorneys and Advocates[5] and Communication First[6] each filed amicus curiae briefs (respectively, "Amicus Br. 1" and "Amicus Br. 2") in support of the Le Papes.

---

[4]  As mentioned, the family is no longer pursuing their claims under the IDEA and state law.

[5] "The Council of Parent Attorneys and Advocates is a not-for-profit organization for parents of children with disabilities, their attorneys[,] and advocates[,] …[and] provides resources, training, and information for parents, advocates, and attorneys to assist in obtaining [] free appropriate public education … under the Individuals with Disabilities Education Act[.]" Amicus Br. 1 at 1.

[6] "Communication First is a national, disability-led nonprofit organization dedicated to protecting and advancing the human, civil, and communication rights of the estimated 5 million children and adults in the United States who, due to disability or other condition, cannot rely on speech alone to be heard and understood."  Amicus Br. 2 at 1.

18

## II.    JURISDICTION & STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We apply plenary review to the District Court's grant of summary judgment, "applying the same standard that the lower court should have applied." *Chisolm v. McManimon*, 275 F.3d 315, 321 (3d Cir. 2001).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We review all facts in the light most favorable to the non-moving party and draw "all justifiable inferences . . . in [its] favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.    ANALYSIS

### a.  The IDEA, ADA, and Section 504 generally

The IDEA, ADA, and Section 504 of the Rehabilitation Act all provide protections for students with disabilities.[7]  But

---

[7] Section 1412 of the IDEA provides in part:
> A State is eligible for assistance … if [it] … has in effect policies and procedures to ensure that [it] meets each of the following conditions [, *inter alia*,]: A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21[.]

20 U.S.C. § 1412(a)(1)(A).

19

how do these overlapping laws interact? For a brief time following the Supreme Court's decision in *Smith v. Robinson*, 468 U.S. 992, 1009 (1984), the IDEA was "the exclusive avenue through which a plaintiff [could] assert an equal protection claim to a publicly financed special education[,]" precluding claims asserting the right to a FAPE under other laws, such as Section 504. Congress, however, promptly "overturned *Smith*'s preclusion of non-IDEA claims while also adding a carefully defined exhaustion requirement[,]" *Fry*, 580 U.S. at 161, per the Handicapped Children's Protection Act of 1986, Pub. L. No. 99-372, 100 Stat. 796, which amended the IDEA to add Section 1415(l). It "'reaffirm[ed] the viability' of federal statutes like the ADA or Rehabilitation Act 'as separate vehicles,' no less integral than the IDEA[.]" 580 U.S. at 161

---

Section 202 of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794(a).

20

(quoting H.R. Rep. 99-296 at 4 (1985)).   Under Section 1415(l),

> [n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f)[8] and (g)[9] shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).  As mentioned above, in *Fry* the Supreme Court held that a plaintiff is required to exhaust his non-IDEA claims in a hearing under the procedures in the IDEA only if his "suit [] seek[s] relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Id.*  The Court reserved the question of whether exhaustion is required when a plaintiff seeks to remedy a denial of a FAPE with a form of relief that is not available under the IDEA.  580 U.S. at 165 n.4.  Recently, however, it answered this question in *Perez v. Sturgis Public Schools*, 598 U.S. 142 (2023), reemphasizing

---

[8] Subsection (f) sets out the procedure for impartial due process hearings.  20 U.S.C. § 1415(f).

[9] Subsection (g) prescribes the procedure for appeals of hearing-officer decisions to state educational agencies.  20 U.S.C. § 1415(g).

the ADA's independence from the IDEA.  The Sixth Circuit had affirmed a district court's dismissal of an ADA claim based on the denial of a FAPE because the plaintiff had failed to exhaust his claim through an IDEA hearing.  In reversing, the Supreme Court held that the IDEA's exhaustion requirement did not apply because the plaintiff sought compensatory damages, not equitable relief, and § 1415(l) "applies *only* to suits that 'see[k] relief . . . also available under' [the] IDEA." *Id.* at 147 (emphasis in original) (also noting that "everyone agrees [the] IDEA does not provide" compensatory damages).

The text of § 1415(l) makes clear that, besides this exhaustion requirement, the IDEA places no restrictions on ADA and Section 504 claims.  Once he has exhausted those claims in an IDEA hearing, a plaintiff may pursue them as he otherwise would in a district court.  The court then must examine the claim for sufficiency of pleading or evidence as applicable to the motion in front of it.

This is essential because a plaintiff may be able to make out an intentional discrimination claim under the ADA even if he receives a FAPE under the IDEA.  A key difference between the IDEA's FAPE obligation and the ADA's effective communication requirement—and one central to the Le Papes' claim—is the emphasis that the public entity must place on the disabled student's preference when deciding what accommodations to provide.  For example, under the IDEA the IEP team for a deaf or hard-of-hearing child must consider, among other factors, "the child's language and communication needs," "opportunities for direct communications with peers and professional[s] in the child's language and communication mode," and "whether the child needs assistive technology devices and services."  20

U.S.C. § 1414(d)(3)(B)(iv) & (v).  It "does not require that parental preferences be implemented, so long as the IEP is reasonably calculated to provide some educational benefit." *Bradley ex rel. Bradley v. Ark. Dep't of Educ.*, 443 F.3d 965, 975 (8th Cir. 2006).

But the ADA, by regulation, adds another requirement: the public entity must "give *primary consideration* to the requests of [the] individual[] with disabilities."  28 C.F.R. § 35.160(b)(2) (emphasis added).  This difference can determine what auxiliary aids and services a child receives.  Under the ADA, "[t]he public entity shall honor the choice [of the individual with a disability] unless it can demonstrate that another effective means of communication exists or that use of the means chosen would not be required under § 35.164."  28 C.F.R. Part 35, App. A.

### b.  The District Court's Decision

In this context, when considering the parties' cross-motions for summary judgment, the District Court should have performed the inquiry demanded by Fed. R. Civ. P. 56 for the ADA and Section 504 claims—determining whether, viewing all facts in the light most favorable to the non-moving party, there exists any genuine issue of material fact.  Instead, it postponed its merits analysis on both claims.  It denied summary judgment to the School District on the Section 504 discrimination claim, stating it would consider that claim on appeal from the administrative record.  Then, it found that the ADA discrimination claim was subsumed by the Le Papes' denial-of-FAPE claim and held that because this was an "*equitable* injury," the Le Papes were not entitled to a jury trial on their ADA claim, despite seeking compensatory damages.

23

App. at 19 (emphasis in original). As with the Section 504 discrimination claim, the Court considered the claim on the administrative record (though it *granted* summary judgment in favor of the School District on the ADA discrimination claim while *denying* it on Section 504 discrimination). App. at 3 n.1.[10]

Ruling for the School District on the ADA discrimination claim without any examination of the factual record that had been developed over the course of months of discovery, the District Court went too far in its application of *Fry*. Having conducted its inquiry under that case and found that the "gravamen" of Le Pape's ADA claim was the denial of a FAPE, App. at 14, it granted summary judgment for the School District and decided the claim on the parties' motions for judgment on the administrative record. However, the only effect of finding that the gravamen of an ADA claim is denial of a FAPE should be that the claim must be exhausted through an IDEA hearing, which the District Court correctly found the Le Papes had done.

But to exhaust an ADA claim in no way extinguishes its independent existence. As the Fifth Circuit recently noted under similar circumstances, "*Fry*'s 'gravamen' of the complaint test speaks only to § 1415(l)'s exhaustion requirement and does not prohibit standalone ADA claims, as evidenced by *Perez*." *Lartigue v. Northside Indep. Sch. Dist.*, 2024 WL 1261291, at *9 (5th Cir. Mar. 26, 2024). As a result,

---

[10] Further adding to the confusion, the Court did so despite stating that "the remedies, procedures, and rights under the ADA are the same as those under Section 504." App. at 18-19.

24

a party may have "viable, standalone ADA claims notwithstanding the presence of a FAPE." *Id.*

The exhaustion requirement does not change that; instead, it is crafted to preserve those independent avenues of relief. "Provided that a plaintiff satisfies the exhaustion requirement of the IDEA"—which per *Perez* may not have applied to the Le Papes' ADA claim[11]—"a plaintiff may assert claims for relief for the denial of a FAPE under multiple federal statutes." *E.E. v. Ridgefield Park Bd. of Educ.*, 2020 WL 3097473, at *8 (D.N.J. June 11, 2020), *aff'd sub nom. Esposito v. Ridgefield Park Bd. of Educ.*, 856 F. App'x 367 (3d Cir. 2021). As did the court in *E.E.*, where "Defendant appear[ed] to argue that Plaintiffs' Section 504 and ADA claims [were] subsumed into their IDEA claims," the District Court here ought to have "conduct[ed] an independent analysis under each statute" and "analyze[d the Le Papes'] Section 504 and ADA claims separately from the IDEA claims." *Id.* To do otherwise runs afoul of § 1415(l)'s explicit preservation of the rights of children with disabilities under the ADA and the Rehabilitation Act.

---

[11] The Le Papes argue that, in light of *Perez*, they were not required to exhaust their ADA and Section 504 claims seeking compensatory damages. First, we point out that the District Court found the claims were exhausted and did not dismiss them for failure to exhaust. Second, the Le Papes also sought the award of attorney fees and costs, remedies which are also available under the IDEA. *Perez* did not address this situation, but our case law states that a request for attorney fees is a request for relief available under the IDEA. *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 276-77 (3d Cir. 2014).

25

We reiterate that the IDEA's FAPE requirement and the ADA/Section 504's effective communication requirement provide for different inquiries. As mentioned, the effective communication requirement imposes a greater obligation of equal access than does the FAPE requirement: "[T]he requirement that a State provide specialized educational services to handicapped children [under the Education for All Handicapped Children Act, the predecessor to the IDEA,] generates no additional requirement that the services so provided be sufficient to maximize each child's potential 'commensurate with the opportunity provided other children[,]'" and its legislative history does "not . . . imply a congressional intent to achieve strict equality of opportunity or services." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 198 (1982). Because the ADA and Section 504's effective communication requirement is so specific, a school may still be in violation of those laws even when a child is able to make educational progress sufficient for a FAPE under the IDEA. For example, if a child is achieving passing marks and advancing from grade to grade, he is presumed to be receiving a FAPE. *Rowley*, 458 U.S. at 204. But that does not mean he is being provided with "*equal opportunity* to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1) (emphasis added). Nor does it mean that, as the effective communication requirement instructs, the school has "give[n] *primary consideration* to the requests of [the] individual[] with disabilities." § 35.160(b)(2) (emphasis added). These are separate questions from whether Alex was denied a FAPE, and the District Court should not have collapsed these inquiries. "[T]he provision of [a] FAPE under the IDEA does not limit a student's right to effective communication [under the ADA.]" U.S. Dept. of Just. & U.S.

26

Dept. of Educ., *Frequently Asked Questions* 15 (Nov. 2014). There is no "indication that Congress intended [the ADA and the IDEA] to interact in a mechanical fashion in the school[] context, automatically pretermitting any Title II [of the ADA] claim where a school's IDEA obligation is satisfied[,]" and there is no basis to conclude that "the success or failure of a student's IDEA claim dictates, as a matter of law, the success or failure of her [ADA] claim." *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1092, 1101 (3d Cir. 2013).

Federal Rule of Civil Procedure 56 allows a district court to grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In assessing this, a court "view[s] the facts in the light most favorable to the non-moving party," and a "judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 218 (3d Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), and *Anderson,* 477 U.S. at 249). We don't know from the District Court's opinion whether there existed genuine issues of material fact precluding entry of summary judgment. It addressed only whether the Le Papes' previously pled ADA claim was independent from their FAPE claims. Finding that the former was FAPE-based, the Court decided to grant summary judgment for the School District on the ADA claim and "consider [it], like [the Le Papes'] IDEA and Section 504 claims, on appeal from the hearing officer's decision." App. at 19. Rule 56 disallows such a grant of summary judgment without examination of the factual record.

27

That inquiry immediately reveals a disputed issue of material fact: the efficacy of the letter board compared to other forms of communication. There is no dispute that the letter board is Alex's preferred method of communication, which is to be the "primary consideration" under the ADA in a public entity's determination of what types of auxiliary aids and services are necessary for effective communication. 28 C.F.R. § 35.160(b)(2). Public entities are exempt from acquiescing to the disabled person's preference if they can provide an alternative, effective means of communication; but "[g]enerally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment." *Chisolm*, 275 F.3d at 327.

There is ample evidence from which a reasonable jury could conclude that that School District violated the ADA's effective communication requirement by denying Alex his preferred method of communication without providing an effective alternative. He testified that the letter board is effective for him and remains his preferred communication method. He is a non-speaker who for the first 16 years of his life had "very minimal communication," was able to say only a few words, and was unable to communicate clearly and as he wished. App. at 1264. By typing, he could transcribe the speech of others but could not communicate his own thoughts. For example, he could not communicate with the school nurse or the guidance counselor about his college plans, course selection, testing, and accommodations; nor could he participate in class, extracurricular activities, or community-based instruction. In addition to Alex's own testimony, seven treating clinicians and Dr. Barry Prizant—a speech pathologist and psycholinguist who has been awarded ASHA's highest honors, has practiced for nearly 50 years, and reviewed

28

approximately 185 minutes of Alex communicating with the letter board and interviewed him—testified that the letter board is effective communication for him. And Alex's treating psychiatrist, Dr. Manley Ghaffari, who is board-certified in child and adolescent psychiatry and focuses her practice on neurodiverse patients, testified that the letter board was "extremely effective in allowing [Alex] to express his thoughts and feelings." App. at 1635. Meanwhile, Vanessa von Hagen, a board-certified behavior analyst and the lead clinician on Alex's home team for several years, testified that he cannot orally communicate in sentences and can only type what he hears, not his own thoughts. She also testified that the letter board was effective communication for Alex. Indeed, as the School District's initial denial of the letter board turned almost exclusively on its concerns about the auxiliary aid's efficacy, that was the most material fact at issue.

We need not resolve this dispute now, nor was it proper for the District Court to do so. Under the Constitution's Seventh Amendment, the Le Papes were entitled to have a jury evaluate the effectiveness of the communication supports for Alex, and this precluded summary judgment where there existed a disputed issue of material fact. *See Chisolm*, 275 F.3d at 326-32. Critically, the Court's role on summary judgment was not to decide that issue. Still less was its role to defer the question and then decide it by a judgment on the administrative record under the modified *de novo* standard of review.

The School District contends that the Le Papes merely attempt to side-step issue preclusion; by its argument, the hearing officer's denial-of-FAPE decision precludes subsequent ADA or Section 504 discrimination claims because the factual issues underlying those discrimination claims are

29

identical to those already determined by the hearing officer in the administrative process.  We disagree.  As a preliminary matter, the School District did not argue to the District Court that the hearing officer's decision should stop independent inquiries, and this argument is thus forfeited.  But even if not, it would fail because "[w]hen exhausting an administrative process is a prerequisite to suit in court," we do not give "preclusive effect to the agency's determination . . . [.]"  *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 152 (2015).  Additionally, "the legal standards under the IDEA and the ADA in this context are significantly different, barring application of issue preclusion to [the Le Papes'] federal ADA claim."  *Lartigue*, 2024 WL 1261291, at *8.

Because there exists at least one disputed issue of material fact, we reverse the Court's grant of summary judgment for the School District on the Le Papes' ADA claim.

c. The District Court's Decision on the Administrative Record

With the legal understanding set out above, we comment further on how it affects the District Court's decision on the parties' cross-motions based on the administrative record.  Though the Court correctly set the case "on two tracks," App. 10, with the intentional discrimination claims to be resolved on summary judgment and the IDEA administrative appeal on the administrative record, it ultimately resolved all three claims based on the administrative record without any discussion of the discovery record.  By doing so, it went off course in three respects.

30

First, it acknowledged that, under the modified *de novo* standard, it presumed that the hearing officer's findings were *prima facie* correct. If it had limited the administrative review to the IDEA claim, that would have been fine. But the ADA/Section 504 claims could not be resolved on the administrative record alone. They needed to be resolved at least on summary judgment, whereby a court is to construe all facts in the light most favorable to the non-moving party and draw "all justifiable inferences . . . in [its] favor," *Anderson*, 477 U.S. at 255, which would mean applying a *de novo* standard of review. This case has a strange procedural history; but even had the Le Papes moved for judgment on the administrative record on those claims, the Supreme Court has required district courts to apply modified *de novo* review only in their review of IDEA claims, *Rowley*, 458 U.S. at 206, and we decline to extend that review to claims under the ADA and Section 504. Applying modified *de novo* review to those claims curtailed the Le Papes' rights and remedies under non-IDEA federal law, as forbidden by § 1415(l), and arrogated jury functions to the Court in violation of the Seventh Amendment.

Next, the District Court left out the factual and expert evidence that had been developed for summary judgment consideration. Though the Le Papes did not argue their intentional discrimination claims when briefing for judgment on the administrative record, the Court *sua sponte* interposed the arguments they had made at summary judgment. App. at 61 n.19. Yet in assessing their intentional discrimination claims, the Court limited which arguments (as well as what evidence) it would consider to only "those arguments [which] are based on evidence available in the administrative record." *Id.* In effect, this disregarded the extensive discovery the Le

31

Papes conducted after filing their amended complaint for non-FAPE-related intentional discrimination. The Court instead resolved the claims on the record from a proceeding where they had not even pursued an intentional discrimination claim, indeed, one where they had argued that the hearing officer had no jurisdiction over the ADA claim.[12]

Finally, applying that modified *de novo* standard of review and failing to consider the discovery record, the Court concluded that the Le Papes' evidence "[did] not outweigh the bulk of the [other] evidence," App. at 51, and resolved any discrepancies by deferring to the hearing officer's determinations. The snag is that the Court, in deciding judgment on the administrative record, weighed the evidence and determined the truth of the matter, deciding disputed issues of material fact that were plainly for a jury. For example, in addressing the School District's email that it would allow the use of a letter board—but not provide a communication partner—"as a reasonable accommodation under [the] ADA," App. at 1263, the Court dismissed the suggestion that this might reflect the District's recognition that the letter board was effective, which would be relevant to whether it acted in violation of the ADA when it failed to "honor the choice [of the individual with a disability]." 28 C.F.R. Part 35, App. A. It instead stated that this did not "change the analysis" and adopted the District's explanation that "using the spelling to communicate was detrimental[,] but it was more detrimental

---

[12] We note that it is strange that the Le Papes did not argue the same for their Section 504 claim, when the claims were almost legally indistinguishable and both sought compensatory damages.

32

for [Alex] not to be in school." App. at 64. That issue is best left for a jury.

* * * *

We clarify some muddled law in our Circuit. A denial-of-FAPE claim under the IDEA can be resolved through an administrative appeal, but ADA and Section 504 discrimination claims seeking compensatory damages, even if on the same facts, should be resolved through summary judgment and, possibly, trial. *See Chisolm*, 275 F.3d at 326-32. We therefore reverse the District Court's grant for the School District of summary judgment on the Le Papes' ADA discrimination claim as well as judgment on the administrative record for their discrimination claims under both that law and Section 504,[13] and we remand for further proceedings.

---

[13] To repeat, the Le Papes do not appeal the District Court's treatment of their denial-of-FAPE claim under Section 504, only their discrimination claim under that law.

33