**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **J.L., et al.**, | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | **NO. 20-1416-KSM** |
| **LOWER MERION SCHOOL DISTRICT**, | |
| Defendant. | |

**MEMORANDUM**

**MARSTON, J.**                                                **December 30, 2024**

Plaintiffs Jennifer Le Pape ("Mother") and Frederic Le Pape ("Father") (collectively, "Parents"), on behalf of their child, Alexandre Le Pape ("Alex"), and Alex, individually, (collectively, "Plaintiffs") bring intentional discrimination claims under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") against Defendant Lower Merion School District (the "District"), alleging that the District failed to take appropriate steps to ensure that communications with Alex were as effective as communications with others and failed to provide Alex with the appropriate auxiliary aids and services necessary to afford Alex an equal opportunity to participate in and enjoy the benefit of various school services and programming.  (Doc. No. 33.)

Plaintiffs have filed five motions in *limine* (Doc. Nos. 134–38), and the District has filed four motions *in limine* and a motion for a hearing pursuant to Federal Rules of Evidence 104 and 604 (Doc. Nos. 129–133).  The Court held oral argument on these motions on December 16, 2024.  (*See generally* Dec. 16, 2024 Hr'g Tr.)  For the reasons discussed below, the Court grants in part and denies in part both Plaintiffs' and the District's motions *in limine* and denies the

District's motion for a hearing.  Because the Court writes only for the parties, the Court does not include a detailed recitation of the facts in this Memorandum.  A more thorough recitation of the facts is included in this Court's previous opinions on the District's *Daubert* motions (*see* Doc. No. 170) and the District's motion for summary judgment (*see* Doc. No. 125).

## I.      Legal Standard

Motions *in limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."  *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990).  Accordingly, the purpose of a motion *in limine* is to "bar 'irrelevant, inadmissible, and prejudicial' issues from being introduced at trial."  *Kaisinger v. Walmart Stores, Inc.*, No. 18-cv-855, 2024 WL 1536040, at *1 (E.D. Pa. Apr. 9, 2024) (quoting *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013)).  The Court should only exclude evidence on a motion *in limine* when the evidence is "clearly inadmissible on all potential grounds."  *Id.*  The moving party "bears the burden of demonstrating that the evidence is inadmissible on all potential grounds."  *Id.* (quoting *Feld v. Primus Techs. Corp.*, No. 12-cv-1492, 2015 WL 1932053, at *1 (M.D. Pa. Apr. 28, 2015)).  The Court may deny a motion *in limine* that lacks the necessary specificity with respect to the evidence to be excluded.  *Leonard*, 981 F. Supp. 2d at 276.

## II.     Discussion

### A.      Plaintiffs' Motions

Plaintiffs have filed five motions *in limine* in which they seek to preclude the District from introducing:  (1) a "position statement" prepared by the American Speech-Language-Hearing Association ("ASHA") and a consent order from the Virginia Board of Audiology and Speech-Language Pathology related to Elizabeth Vosseler, the founder of Spelling to Communicate ("S2C") (Doc No. 134); (2) evidence of the District's fulfillment of its Free

Appropriate Public Education ("FAPE") obligations to Alex under the Individuals with Disabilities Education Act ("IDEA"), the IDEA administrative proceedings, and related subsequent decisions, including the decision of this Court (Doc. No. 135); (3) evidence of fundamental alteration or undue financial or administrative burdens caused by Alex's chosen means of communication (Doc. No. 136); (4) expert opinion testimony of the District's lay witnesses (Doc. No. 137); and (5) the opinions of Dr. Howard Shane, who is serving as an expert for the District (Doc. No. 138). The District opposes the motions. (Doc. Nos. 144–47, 150.) The Court addresses each motion in turn.

### 1. Motion to exclude ASHA Statement and Vosseller Consent Order

*ASHA Statement.* Plaintiffs move to exclude a "position statement" prepared by an "Ad Hoc Committee on Facilitated Communication (FC) and Rapid Prompting Method (RPM)" of ASHA, issued in approximately June 2018 and amended in August 2018 (the "ASHA Statement"), as irrelevant under Federal Rule of Evidence 401, inadmissible hearsay under Federal Rule of Evidence 802, or, alternatively, under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the dangers of unfair prejudice, confusing the issues, and wasting time. (Doc. No. 134-1 at 2.) The District responds that the ASHA Statement is "clearly relevant," as the District referenced this statement as one of its reasons for ultimately denying Plaintiffs' request to allow Alex to use a letterboard and communication partner at school. (Doc. No. 147-1 at 3–4.) The District further argues that the ASHA Statement is not inadmissible hearsay because it is being offered for its "effect on the listener" rather than for the truth of the matter asserted. (*Id.* at 4.) The District also contends that introduction of the ASHA Statement will not confuse the jury because it will help the jury understand why the District denied Plaintiffs' request, which "is central for the jury to determine whether the District was deliberately indifferent." (Doc. No. 147-1 at 3–4.)

The Court agrees with the District that the ASHA Statement is clearly relevant to the issue of whether the District acted with deliberate indifference when it precluded Alex from using a letterboard and communication partner at school. *See* Fed. R. Evid. 401. As the District points out, Mother acknowledges that following the September 2018 S2C training session for the District, during which the District inquired about the ASHA Statement, the District cited "specific concerns from the ASHA [Statement]" as a reason for ultimately denying Plaintiffs' request to allow Alex to use a letterboard and communication partner at school in November 2018. (*See* Doc. No. 147-4, Jennifer Le Pape Dep. 74:4–23, 75:20–77:1; Doc. No. 64-67.) Accordingly, and contrary to Plaintiffs' contention, the ASHA Statement is not rendered irrelevant because it was issued a year after Plaintiffs first requested that Alex be allowed to use a letterboard and communication partner at school.

The Court also agrees with the District that the ASHA Statement is admissible for the non-hearsay purpose of showing its effect on the listener—i.e., explaining the reasoning behind the District's decision to prohibit Alex from using a letterboard and communication partner at school. *See Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 65 (3d Cir. 2019) (affirming district court's decision to admit third-party statements collected during an employment investigation as non-hearsay evidence "'to explain why' [defendants] terminated [plaintiff], that is, 'for the statements' effect on the listener'") (quoting *United States v. Edwards*, 792 F.3d 355, 357 n.2 (3d Cir. 2015)).

Finally, with respect to Plaintiffs' Rule 403 arguments, the Court finds that the highly probative value of the ASHA Statement, based on the fact that the District cited it as a specific reason for denying Plaintiffs' request for Alex's use of S2C at school, is not substantially outweighed by the dangers of unfair prejudice, confusing the issues, or wasting time. *See*

4

*Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343–44 (3d Cir. 2002) ("[T]here is a strong presumption that relevant evidence should be admitted, and thus for exclusion under Rule 403 to be justified, the probative value of evidence must be 'substantially outweighed' by the problems in admitting it.  As a result, evidence that is highly probative is exceptionally difficult to exclude."); Fed. R. Evid. 403.  The Court agrees with the District that Plaintiffs' implication that the ASHA Statement would lead to jury confusion and/or wasted time because it relates to the Rapid Prompting Method ("RPM") is meritless.  As the District notes, the ASHA Statement explicitly references "Spelling to Communicate" as a "foundationally and procedurally similar alternative form" of RPM and indicates its applicability "regardless of the name used for the technique."[1]  (*See* Doc. No. 147-2 at 2.)  And to the extent Plaintiffs are concerned about the ASHA Statement's implications regarding "the legal or ethical liability" of speech-language pathologists, Plaintiffs can address any such implications with their own expert and lay speech-language pathologist witnesses as well as through cross-examination of the District's witnesses.

The Court recognizes that the ASHA Statement is unfavorable evidence for Plaintiffs, but the Court does not find that it is unduly prejudicial to warrant its exclusion under Rule 403.  The Court will give a limiting instruction and directs the parties to meet and confer and propose an instruction that the ASHA Statement is being offered for a limited non-hearsay purpose.  This

---

[1] While the parties disagree about the extent to which Alex's use of a letterboard and communication partner should be characterized as "S2C," it is undisputed that Alex learned to use a letterboard and communication partner through S2C (*see* Doc. No. 64-36, Jennifer Le Pape Decl. ¶ 23 ("In or about May 2017, [Alex] started learning to communicate using a 9 x 11 laminate board through spelling to communicate.")) and that Plaintiffs specifically requested that the District implement "S2C" for Alex at school (*see, e.g.*, Doc. No. 64-40 at 3 ("We request that the District train the team in the Spelling to Communicate Method. . . .  A person who could serve as a 1:1 to Alex should be part of the team that is trained in Spelling to Communicate.  After being trained, that person would work with Alex at school all day, every day."); Doc. No. 64-51 at 2 ("[W]e reiterate that it is our hope that the outcome of this meeting will be that you agree to move forward with scheduling time for district staff to be trained in S2C so that we can begin to pilot how best to use this strategy to help Alex more fully participate in the LMHS curriculum . . . .  We trust that . . . you [have] sufficient data to agree that S2C represents a significant advance in Alex's ability to communicate.")).

limiting instruction and Plaintiffs' anticipated introduction of expert testimony on the scope and impact of the ASHA Statement will minimize the risk of unfair prejudice to Plaintiffs.

Accordingly, the Court denies Plaintiffs' motion with respect to the ASHA Statement.

***Vosseller Consent Order.***  Plaintiffs also move to exclude the October 24, 2018 consent order entered into by the Virginia Board of Audiology and Speech-Language Pathology and Elizabeth Vosseller, the founder of S2C, pursuant to which Ms. Vosseller agreed to three years' probation for practicing with a lapsed license from January 1, 2005 to December 13, 2017 (the "Vosseller Consent Order").  Plaintiffs argue that the Vosseller Consent Order should be excluded as irrelevant under Federal Rule of Evidence 401 or, alternatively, under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and wasting time.  (Doc. No. 134-1 at 5–6.) The District counters that the Vosseller Consent Order is relevant to "undercut the credibility of the testimony of [Mother]" because Mother advised the District that Ms. Vosseller was "a certified [speech-language pathologist] with over two decades of practice with autistic individuals" when she initially requested that the District incorporate Alex's use of S2C at school in October 2017.  (Doc. No. 147-1 at 4–5.)

The Vosseller Consent Order was issued more than one year after Parents initially requested that the District allow Alex to use a letterboard and communication partner at school and Mother represented to the District that Ms. Vosseller was "a certified [speech-language pathologist]."  (*See* Doc. No. 134-3 at 8; Doc. No. 64-42 at 2.)  The administrative record reveals that Mother was not aware of Ms. Vosseller's lapsed license when she made that representation to the District in October 2017 and suggests that Mother was not aware of Ms. Vosseller's lapsed license or the resulting Vosseller Consent Order at any point during the period when Plaintiffs

were working with the District to try to incorporate S2C for Alex at school. (*See* Doc. No. 13-6, Apr. 11, 2019 Due Process Hr'g Tr. 141:25–142:10, 154:17–155:7.)

Further, there is nothing in the record to suggest that the District or anyone working with Alex who had been trained in S2C knew about Ms. Vosseller's lapsed license or the resulting Vosseller Consent Order at any point leading up to the District's decision to deny Plaintiffs' request for Alex to use S2C at school. (*See id.* 73:6–19 (in their opening statement, the District's counsel claiming that "at no time" was the District "told that Elizabeth Vosseller had been under probation or that she did not have a speech and language therapist license"); Doc. No. 13-5, Sept. 10, 2019 Due Process Hr'g Tr. 318:4–20 (Alex's communication partner, Tom Foti, testifying that Ms. Vosseller did not tell him she was not a licensed speech-language pathologist when he started in her S2C training cohort in March 2017); *id.* 519:7–10 (Alex's S2C-trained home tutor, Carole Policastro, testifying that Ms. Vosseller never told her that she was not a licensed speech-language pathologist); Doc. No. 13-4, Oct. 15, 2019 Due Process Hr'g Tr. 690:3–15 (Melissa Sinapi-Gibson, a special education supervisor for the District, testifying that she was not aware that Ms. Vosseller was not a licensed speech-language pathologist until after the District agreed to participate in S2C training).

The Court thus finds that the Vosseller Consent Order is not relevant to "show that [Mother] was misrepresenting the facts about S2C from the beginning" as the District suggests, and is otherwise marginally relevant to the issues in this case. This minimal probative value is substantially outweighed by the likelihood that the introduction of the Vosseller Consent Order will confuse the issues and mislead the jury about information that was not known to any party when the relevant discussions and decisions regarding Alex's use of S2C at school took place.

*See* Fed. R. Evid. 403.  Accordingly, the Court grants Plaintiffs' motion with respect to the Vosseller Consent Order.

***

In summary, the Court denies Plaintiffs' motion with respect to the ASHA Statement and grants Plaintiffs' motion with respect to the Vosseller Consent Order.  As noted above, the parties must meet and confer and submit a proposed limiting instruction on the non-hearsay purpose for introducing the ASHA Statement.

> **2.    Motion to preclude evidence on whether the District fulfilled its FAPE obligations and the administrative proceedings and subsequent decisions**

Plaintiffs move to preclude evidence "on whether the District fulfilled its procedural and substantive FAPE obligations for Alex, including concerning the District's offer of programming and placement and related services throughout the time Alex was a student in the District, and on the IDEA administrative proceedings and subsequent decisions" as irrelevant to Plaintiffs' distinct ADA and Section 504 intentional discrimination claims under Federal Rule of Evidence 401 or, alternatively, under Federal Rule of Evidence 403.  (Doc. No. 135-1 at 2.)  In response, the District argues that it "must be able to introduce evidence that it was determined as a matter of law to have provided Alex with an appropriate education that conferred meaningful educational benefit upon Alex" in order to defend against Plaintiffs' claims that Alex suffered loss of educational benefit, which, the District argues in a separate motion *in limine*, Plaintiffs are not entitled to recover as damages.  (Doc. No. 145-1 at 2–4.)

As the Third Circuit clarified on appeal in this case, Plaintiffs' remaining ADA and Section 504 intentional discrimination claims are legally distinct from Plaintiffs' IDEA claim, such that resolution of Plaintiffs' IDEA claim does not limit Plaintiffs' ability to proceed with and recover damages for their ADA and Section 504 claims.  *See Le Pape v. Lower Merion Sch.*

*Dist.*, 103 F.4th 966, 979, 981 (3d Cir. 2024) ("The text of [the IDEA] makes clear that, besides

[an] exhaustion requirement, the IDEA places no restrictions on ADA and Section 504

claims. . . .  There is no indication that Congress intended the ADA and the IDEA to interact in a

mechanical fashion in the school context, automatically pretermitting any Title II of the ADA

claim where a school's IDEA obligation is satisfied, and there is no basis to conclude that the

success or failure of a student's IDEA claim dictates, as a matter of law, the success or failure of

her ADA claim." (cleaned up) (internal quotations omitted)).  Accordingly, evidence of "the

IDEA administrative proceedings and subsequent decisions" is not relevant to this action and

would unfairly prejudice, mislead, and confuse the issues for the jury, warranting its exclusion

under Rules 401 and 403.  *See* Fed. R. Evid 401, 403.

       That leaves the evidence of the District's "offered programming and placement for Alex

and his progress in the District."  The Third Circuit's clarification that distinct legal analyses are

required for an IDEA denial-of-FAPE claim and ADA and Section 504 intentional

discrimination claims does not mean that evidence can only be relevant to and admissible for one

of those legal analyses.  The Court acknowledges the obvious and significant factual overlap

between Plaintiffs' IDEA denial-of-FAPE claim and ADA and Section 504 intentional

discrimination claims.  Evidence of the District's "offered programming and placement for Alex

and his progress in the District," including the anticipated "testimony of teachers and related

service providers concerning Alex's progress in the District's programming and placement," is

relevant to the material factual issues of the efficacy of other communication supports that the

District provided to Alex as well as the District's knowledge when it refused to allow Alex to use

S2C at school.  *See Le Pape*, 103 F.4th at 981 (characterizing "the efficacy of the letter board

compared to other forms of communication" as a disputed issue of material fact in this case);

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013) (to satisfy the deliberate indifference standard to prove intentional discrimination, plaintiff must prove defendant's "knowledge that a federally protected right is substantially likely to be violated" and "failure to act despite that knowledge"); Fed. R. Evid. 401. Such evidence is also relevant to Plaintiffs' claims for damages in the form of loss of educational benefit, which the Court addresses below with respect to the District's motion *in limine* to preclude evidence of educational loss. Unlike evidence of the IDEA administrative proceedings and the resulting subsequent decisions, the Court finds that this evidence is relevant and is not unfairly prejudicial or confusing. *See* Fed. R. Evid. 403.

In summary, the Court grants Plaintiffs' motion with respect to evidence of the IDEA administrative proceedings and subsequent decisions, including the decision of this Court, but denies Plaintiffs' motion with respect to evidence "concerning the District's offer of programming and placement and related services throughout the time Alex was a student in the District." The parties are directed to meet and confer and submit a proposed stipulation that the parties do not dispute that the District provided Alex with a FAPE.

### 3.    Motion to exclude evidence of fundamental alteration or undue financial or administrative burdens

Plaintiffs move to exclude evidence "that use of Alex's chosen means of communication would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens" under Federal Rule of Evidence 403 because the District "has never asserted, pleaded, or argued" the affirmative defenses of fundamental alteration or undue financial and administrative burdens to Plaintiffs' intentional discrimination claims. (Doc. No. 136-1 at 2–3.) The District counters that it will not offer any such evidence; rather, it will offer evidence of "all of the efforts it took to investigate S2C" and its resulting

10

determination that "S2C is not an effective means of communication." (Doc. No. 146-1 at 2.) Accordingly, and for the reasons stated on the record on December 16, 2024 (*see* Dec. 16, 2024 Hr'g Tr. 17:9–21:15), the Court denies Plaintiffs' motion as moot.

####     4.    Motion to preclude opinion testimony of District's lay witnesses

Plaintiffs move to preclude the District from "offering opinion testimony from lay witnesses pursuant to Federal Rule of Evidence 701, including opinion testimony from speech/language therapists, psychologists and teachers employed by the District" because the District did not identify any "Rule 701 witnesses" by the deadlines specified in this Court's Third Amended Scheduling Order (Doc. No. 71) and, therefore, Plaintiffs "would be prejudiced by the District's failure to disclose them." (Doc. No. 137-1 at 2.) During oral argument, Plaintiffs further clarified that they "don't think [the District's lay witnesses] are entitled to be asked . . . 'In your opinion, is [S2C] effective communication for Alex and what is the basis of your opinion?'" (Dec. 16, 2024 Hr'g Tr. 22:1–9, 23:2–6.) The District counters that the testimony of its lay witnesses "about their observations and the activities that they participated in, and why, based on those things, the District reached the decision that S2C does not work, is not the type of testimony covered by Rule 701." (Doc. No. 150 at 3–4; *see* Dec. 16, 2024 Hr'g Tr. 21:19–23, 22:11–23.) The District further contends that even if such testimony is covered by Rule 701, Plaintiffs would not be prejudiced by the introduction of this testimony at trial because it will come from the same witnesses who testified at the due process hearing and who were deposed by Plaintiffs' counsel. (*Id.* at 4–5.)

As an initial matter, the Court is not convinced that any anticipated testimony from the District's lay witnesses about their role in the District's determination not to incorporate S2C as

a communication method for Alex at school[2] falls under Rule 701 as lay opinion testimony.  *See United States v. Fulton*, 837 F.3d 281, 291 (3d Cir. 2016) ("[Rule 701] permits witnesses to testify to their personal perceptions in the form of *inferences or conclusory opinions*." (internal quotation omitted) (emphasis added)); *cf. United States v. Wheeler*, No. 16-3780, 2021 WL 4129731, at *6–7 (3d Cir. Sept. 10, 2021) (during criminal drug and firearms trial, lead investigator's explanation that his investigation team followed defendant by airplane because they had determined that defendant was "very surveillance conscious" was not an opinion that warranted exclusion under Rule 701; rather, it was testimony that showed the investigator's state of mind as to how he approached defendant's arrest, based on information gleaned from listening to defendant's wiretapped phone call).

Even assuming that such testimony does fall under Rule 701, the Court does not interpret Plaintiffs' argument for exclusion of this testimony as premised on any of the foundational requirements of Rule 701; rather, Plaintiffs argue that they will be prejudiced by the District's purported failure to disclose its lay witnesses as Rule 701 witnesses pursuant to this Court's order.  (*See* Dec. 16, 2024 Hr'g Tr. 22:1–9 ("[M]y concern is, again, I don't want speech language pathologists taking the stand and . . . being asked a question of, in your opinion, is this effective communication for Alex?  Because that, I feel, is not appropriate, since these witnesses were not identified . . . pursuant to the Court's scheduling order.").)  The Court agrees with the District that Plaintiffs have not identified how or why they will be prejudiced by the District's failure to disclose Rule 701 witnesses.  And the Court is skeptical that Plaintiffs can establish

---

[2] During oral argument, the District described this anticipated testimony as follows: "District lay witnesses will testify about their specific observations and activities they participated in, and why based on those things[,] certain of them concluded that it was not effective communication. . . .  They are going to testify as to exactly what they did and how they came to their conclusion."  (Dec. 16, 2024 Hr'g Tr. 22:11–23.)

any such prejudice—let alone the level of prejudice necessary to warrant preclusion of the District's lay witness testimony about the District's decision to prohibit Alex's use of S2C at school—given that, as the District contends, the District's anticipated lay witnesses are the same witnesses who previously testified at the due process hearing and were deposed by Plaintiffs' counsel. *See Mitchell v. City of Philadelphia*, 344 F. App'x 775, 781 (3d Cir. 2009) (finding that district court's failure to enforce Federal Rule of Civil Procedure 26(a), Local Rule 16.2, and the court's own procedures by allowing certain expert testimony was not an abuse of discretion because plaintiffs "suffered no prejudice," as they "deposed [this expert] two years before trial, had access to the materials he used to form his opinions for even longer than that, and were given the opportunity to cross-examine him at length at trial); *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) ("The exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." (cleaned up) (internal quotation omitted)).

And to the extent that Plaintiffs are arguing for exclusion of the District's lay opinion testimony based on the District's failure to meet all three foundational requirements of Rule 701, the Court finds that this argument fails. All of the District's anticipated lay witnesses were employed by the District during the relevant time period and, as represented by the District, will testify based on their firsthand knowledge of their participation in the District's efforts to decide whether to allow Alex to use S2C at school. *See* Fed. R. Evid. 701(a) (lay opinion testimony must be "rationally based on the witness's perception"). Given that Plaintiffs have sued the District for intentional discrimination based on the District's decision to prohibit Alex from using S2C at school, the District is entitled to defend itself against those claims by introducing evidence of how and why it reached that decision, including its determination—made by the

District's employees whom the District anticipates calling as trial witnesses—that S2C was not an effective means of communication for Alex. *See* Fed. R. Evid. 701(b)–(c) (lay opinion testimony must be "helpful to clearly understanding the witness's testimony or to determining a fact in issue" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702"). For these reasons, the Court denies Plaintiffs' motion.

### 5. Motion to preclude opinions of Dr. Howard Shane

Plaintiffs move to preclude the opinions of Dr. Howard Shane, an anticipated expert witness for the District who will opine on the "effectiveness and appropriateness of using the method known as Spelling to Communicate (S2C) with Alex LePape" and rebut the opinions of Plaintiffs' anticipated expert witnesses, Dr. Amy Laurent and Dr. Barry Prizant. (Doc. Nos. 138, 144-3–144-4.) Plaintiffs argue that because Dr. Shane's opinions are not based on any analysis of "Alex's communication with a letter board and communication partner," they are irrelevant under Federal Rule of Evidence 401. (Doc. No. 138-1 at 2–5.) Alternatively, Plaintiffs argue for the preclusion of Dr. Shane's opinions under Federal Rule of Evidence 403 because these opinions "would invade the province of the jury, offering an opinion as to the credibility of [Alex's] testimony with the letter board." (*Id.* at 5–6.) The District responds that Dr. Shane's opinions are relevant because they invalidate Plaintiffs' claims as to why Alex needs a communication partner to communicate effectively, they support the District's decision to deny Plaintiffs' request for Alex to use S2C at school, and they rebut or place into context statements made by Plaintiffs' experts, Dr. Laurent and Dr. Prizant. (Doc. No. 144-1 at 2–5.)

Like the opinions of Dr. Laurent and Dr. Prizant offered by Plaintiffs, Dr. Shane's opinions are relevant to the material factual issues of the efficacy of a letterboard and communication partner for Alex, the efficacy of other communication supports that the District provided to Alex, and the District's knowledge when it refused to permit Alex to use S2C at

school at least in part due to the perceived lack of supporting scientific research.  (*See* Doc. No. 64-65 at 2.)  *See Le Pape*, 103 F.4th at 981 (characterizing "the efficacy of the letter board compared to other forms of communication" as a disputed issue of material fact in this case); *S.H.*, 729 F.3d at 265; Fed. R. Evid. 401.  Plaintiffs' contention that Dr. Shane does not base his opinions on any "personal interactions" with Alex or investigations of "authorship with Alex's use of the letter board" is not entirely accurate, as Dr. Shane indicates in his affirmative report that he compared the "content of [Alex's] work produced independently with [his] work produced with the assistance of a facilitator."  (Doc. No. 144-3 at 11; *see id.* at 5.)  In any event, the Court agrees with the District that this contention, which is really a *Daubert* reliability argument disguised as a motion *in limine*, goes to the weight—not the admissibility—of Dr. Shane's testimony and, accordingly, can be appropriately addressed through Plaintiffs' cross-examination of Dr. Shane.  *See United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) ("A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination." (internal quotation omitted)).

Furthermore, the Court does not find that the probative value of Dr. Shane's opinions is substantially outweighed by the dangers of unfair prejudice, confusing the issues, and misleading the jury under Rule 403.  Considering that Plaintiffs will offer their own expert opinions as to the efficacy of Alex's use of S2C as a means of communication and the significance of a communication partner for Alex, the Court finds that Plaintiffs will not be unfairly prejudiced, and the jury will not be confused or misled, by the introduction of Dr. Shane's contrasting opinions.

For these reasons, the Court denies Plaintiffs' motion.  However, consistent with the

Court's recently issued *Daubert* opinion with respect to Dr. Prizant (*see* Doc. No. 170 at 18–20),

the Court will preclude Dr. Shane's opinions to the extent they relate to human rights violations,

including violations of the United Nations Conventions on the Rights of Persons with

Disabilities, because such opinions are impermissible legal conclusions and unfairly prejudicial

and confusing to the jury.  *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 & n.23 (3d

Cir. 2006) ("[A]lthough a witness may give an opinion as to an ultimate issue, Rules 701, 702,

and 403 'stand ready to exclude opinions phrased in terms of inadequately explored legal

criteria.'" (quoting Fed. R. Evid. 704, Advisory Comm. Notes)); *Schneider ex rel. Estate of

Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) ("[T]he expert's testimony must be relevant

for the purposes of the case and must assist the trier of fact.").

### B.    The District's Motions

The District has filed four motions *in limine* in which it seeks to preclude Plaintiffs from

introducing evidence of:  (1) educational loss, including the expert testimony of Chad Staller

(Doc. No. 129); (2) Alex's emotional distress and migraine headaches (Doc. No. 130); (3) all

facts or opinions not presented to or known by the District as of December 20, 2018, the last date

on which the District denied Alex's request to use S2C at school (Doc. No. 131); and (4) other

individuals who communicate using a letterboard (Doc. No. 132).  The District has also filed a

motion for a hearing pursuant to Federal Rules of Evidence 104 and 604 to determine the

preliminary issues of whether Alex can testify using S2C and, if so, whether the facilitator who

will be working with Alex is properly qualified and unbiased.  (Doc. No. 133.)  Plaintiffs oppose

the motions.  (Doc. Nos. 139–40, 142–43, 149.)  The Court addresses each motion in turn.

### 1.    Motion to preclude the expert testimony of Chad Staller and all testimony and evidence of educational loss

The District moves to preclude the opinions of Chad Staller, an anticipated expert witness for Plaintiffs who will opine on the damages that Plaintiffs incurred for Alex's past and future educational services and the future costs for Alex's psychiatric treatment, and all evidence of educational loss as irrelevant under Federal Rule of Evidence 401 or, alternatively, under Federal Rule of Evidence 403.  (Doc. No. 129 at 5–7; Doc. No. 129-2.)

*Mr. Staller's testimony on educational loss damages and other evidence of educational loss.*  The District contends that because it has been judicially determined that the District provided Alex with a FAPE and is not entitled to recover compensatory education or tuition reimbursement under the IDEA, Plaintiffs cannot recover educational loss damages under the ADA or Section 504, which renders Mr. Staller's opinions as to those damages irrelevant under Rule 401 and unfairly prejudicial under Rule 403.  (Doc. No. 129 at 5–7.)  Plaintiffs counter that the resolution of their IDEA claim does not preclude them from recovering educational loss damages for their ADA or Section 504 claims.  (Doc. No. 143 at 2–4.)

As explained above with respect to Plaintiffs' motion *in limine* to preclude evidence of the District's fulfillment of its FAPE obligations, given the distinct legal standards imposed by the IDEA's FAPE requirement and the effective communication requirement of the ADA and Section 504, the resolution of Plaintiffs' IDEA claim does not foreclose Plaintiffs from proceeding with separate ADA and Section 504 intentional discrimination claims, as they are doing here.  *See Le Pape*, 103 F.4th at 979, 981.  Accordingly, the resolution of their IDEA claim—including this Court's holding that "the Hearing Officer correctly determined that the District provided [Alex] with a FAPE, and because the District provided [Alex] with a FAPE, he is not entitled to compensatory education or tuition reimbursement" (Doc. No. 129 at 5)—does

not limit the types of relief that Plaintiffs are entitled to recover under the ADA and Section 504 for intentional discrimination. *See* 20 U.S.C. § 1415(l) ("Nothing [under the IDEA] shall be construed to restrict or limit the . . . remedies" available under, *inter alia*, the ADA and the Rehabilitation Act, "except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the procedures under [the IDEA] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]"); *B. S. M. v. Upper Darby Sch. Dist.*, 103 F.4th 956, 964 (3d Cir. 2024) ("[B]eyond [the IDEA's] requirement to exhaust, Section 504 plaintiffs retain the 'rights, procedures, and remedies' otherwise available to them."); *Le Pape*, 103 F.4th at 979, 981 ("The text of [the IDEA] makes clear that, besides [an] exhaustion requirement, the IDEA places no restrictions on ADA and Section 504 claims. . . . and there is no basis to conclude that the success or failure of a student's IDEA claim dictates, as a matter of law, the success or failure of her ADA claim." (cleaned up) (internal quotations omitted)); *cf. Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 145, 147–48 (2023) (holding that the IDEA's exhaustion requirement did not preclude the plaintiff from bringing his ADA claim because "the backward-looking relief in the form of compensatory damages" he seeks is "a form of relief everyone agrees IDEA does not provide").

Evidence of educational loss is relevant to establish the specific compensatory damages that Plaintiffs seek and are entitled to recover for their ADA and Section 504 claims, thus its probative value is not substantially outweighed by the dangers of unfair prejudice or confusing the issues. *See Coleman*, 306 F.3d at 1343–44 (3d Cir. 2002); Fed. R. Evid. 403. Accordingly, the Court denies the District's motion with respect to evidence of Plaintiffs' educational loss, including Mr. Staller's opinions as to the amount of educational loss damages Plaintiffs incurred.

*Mr. Staller's testimony on future medical care damages.*  The District argues that Plaintiffs are not entitled to recovery of emotional distress damages under the ADA or Section 504, which renders Mr. Staller's opinions as to those damages irrelevant under Rule 401 and unfairly prejudicial under Rule 403.  (Doc. No. 129 at 6–7.)  Plaintiffs respond that they are entitled to recovery of emotional distress damages under the ADA, but even if they are prohibited from recovering emotional distress damages for both their ADA and Section 504 claims, the non-educational loss damages that Plaintiffs seek are for payment of future medical expenses, i.e., Alex's psychiatric treatment, which is still a recoverable form of compensatory damages.  (Doc. No. 143 at 2–4.)

As explained below with respect to the District's motion *in limine* to exclude evidence of Alex's emotional distress and migraine headaches, the Supreme Court held in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022), that emotional distress damages are not recoverable in private discrimination actions brought under Section 504, and this Court holds that the Supreme Court's ruling in *Cummings* applies to claims brought under Title II of the ADA, which "explicitly borrows the 'remedies, procedures, and rights' available under the Rehabilitation Act." *See Doherty v. Bice*, 101 F.4th 169, 175 (2d Cir. 2024), *cert. denied*, __ S. Ct. __, 2024 WL 4486399 (Oct. 15, 2024) (quoting 42 U.S.C. § 12133); *A.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1314–15 (11th Cir. 2024), *petition for cert. filed*, No. 24-523 (Nov. 5, 2024).  Accordingly, Plaintiffs are not entitled to recover emotional distress damages for either their ADA or Section 504 intentional discrimination claims.

The Court is not convinced by Plaintiffs' argument that the non-educational loss damages that they seek—payment of Alex's future psychiatric treatment expenses—are not emotional distress damages and, therefore, are still recoverable.  (*See* Doc. No. 143 at 6 n.4.)  Plaintiffs do

identify one district court decision, *Pennington v. Flora Comm'y Unit Sch. Dist. No. 3*, No. 20-CV-11, 2023 WL 348320, at *3–4 (S.D. Ill. Jan. 20, 2023), that affirmatively held that medical expenses for "treatment for [plaintiff's] psychological injuries" are compensatory damages for economic losses that *Cummings* did not preclude and declined to dismiss plaintiffs' Section 504 and ADA claims on that basis (albeit also because defendant "did not present any argument that this type of compensatory damages is not recoverable").  (*See* Doc. No. 143 at 6 n.4.)  However, the vast majority of district courts confronted with this issue in the wake of *Cummings*, including district courts in this Circuit, have held that mental health treatment costs constitute emotional distress damages because they stem from emotional distress as the underlying injury.  *See, e.g.*, *A.T. v. Oley Valley Sch. Dist.*, No. 17-cv-4983, 2023 WL 1453143, at *3–4 (E.D. Pa. Feb. 1, 2023) (based on *Cummings*, granting summary judgment in favor of defendant on all of plaintiffs' claims for compensatory emotional distress damages brought under Title IX, Section 504, and ADA, including plaintiffs' "claims for past, present and future medical expenses based on emotional distress such as . . . anxiety"); *B.R. v. F.C.S.B.*, 718 F. Supp. 3d 504, 512 (E.D. Va. Feb. 26, 2024) (holding that *Cummings* precludes plaintiff from recovering any medical treatment costs associated with plaintiff's various emotional distress damages, including "depression, anxiety, fear, emotional distress, mental anguish," and "physical manifestations of emotional or psychiatric distress" under Title IX); *J.C. v. Bd. of Regents of Univ. Sys. of Ga.*, No. 20-cv-4445, 2023 WL 4938054, at *4–5 (N.D. Ga. Aug. 1, 2023) ("[E]xpenses for counseling and psychiatric treatment are not recoverable under Title IX post-*Cummings*."); *M.R. v. Burlington Area Sch. Dist.*, No. 21-cv-1284, 2023 WL 4826471, at *5 (E.D. Wis. July 27, 2023) (after considering *Pennington*, deciding to "join the greater number of courts that have concluded that the mental health treatment costs sought to be recovered are mere proxies for emotional

20

distress damages and therefore unrecoverable" in Title VII actions "[i]n the absence of clear guidance from the Seventh Circuit"); *Doe v. Fairfax Cnty. Sch. Bd.*, No. 18-cv-00614, 2023 WL 424265, at *6 (E.D. Va. Jan. 25, 2023) (excluding evidence of "expenses for counseling and medical treatment for stomach-related issues" as "proxies for impermissible emotional distress damages" under Title IX).  Persuaded by these cases, the Court finds that Plaintiffs are precluded from recovering Alex's future psychiatric treatment expenses, as these fall into the category of emotional distress damages that are not recoverable under the ADA and Section 504.  Accordingly, the Court grants the District's motion with respect to Mr. Staller's opinions as to the projected cost of future psychiatric treatment for Alex.

***

In summary, the Court denies the District's motion with respect to evidence of Plaintiffs' educational loss, including Mr. Staller's opinions about Plaintiffs' educational loss damages, and grants the District's motion with respect to Mr. Staller's opinions about Plaintiffs' non-educational loss damages, i.e., Alex's future psychiatric treatment expenses.

### 2.    Motion to exclude argument or evidence of Plaintiff's emotional distress or migraine headaches

The District moves to exclude "any argument or evidence concerning [Alex's] alleged emotional distress or migraine headaches or any suggestion that any action of the District is responsible for [Alex's] alleged emotional distress or migraine headaches" as irrelevant under Federal Rule of Evidence 401 or, alternatively, as unfairly prejudicial under Federal Rule of Evidence 404.  (Doc. No. 130-1 at 1, 4–5.)  The District contends that the Supreme Court's decision in *Cummings* precludes Plaintiffs from recovering damages for any of Alex's alleged emotional distress or the exacerbation of his migraine headaches arising from his stress or anxiety, and evidence of any such emotional distress would be "highly prejudicial because it

would have the tendency to cause the jury to decide the issues in this case based on sympathy for Alex." (*Id.* at 4–5.)  In response, Plaintiffs argue that (1) the District's motion is overbroad and fails to describe the supposedly objectionable evidence with sufficient specificity; (2) *Cummings* does not apply to Plaintiffs' ADA claim and, therefore, Plaintiffs can recover emotional distress damages for their ADA claim; and (3) even if *Cummings* does bar Plaintiffs' recovery of emotional distress damages for both their ADA and Section 504 claims, evidence of Alex's emotional distress and migraines is relevant to the issues of the efficacy of S2C for Alex, the efficacy of other communication supports that the District provided to Alex, and the District's knowledge when it refused to allow Alex to use S2C at school, given that in certain of Plaintiffs' requests, Parents "conveyed the toll that the District's failure to provide effective communication had on their son." (*Id.* at 2–5.)

First, the Court does not find that the District's motion lacks the necessary specificity for the Court to rule on it, given that the District notes Plaintiffs' intention to seek emotional distress damages and describes Plaintiffs' anticipated evidence of Alex's emotional distress by outlining Plaintiffs' expert opinions on Alex's declining mental health and worsening migraines. (*See* Doc. No. 130-1 at 2–3.) *Contrast Abira Med. Labs., LLC v. Karim*, No. 20-cv-4317-KSM, 2022 WL 22891428, at *1 n.1 (E.D. Pa. Sept. 15, 2022) (denying plaintiff's motion *in limine* without prejudice because the motion "makes no efforts to forecast the categories of evidence and testimony [d]efendant might introduce at trial, nor does it offer any context as to the situations in which [d]efendant would offer such evidence").

Next, and as previewed above in the Court's analysis of the District's motion *in limine* to exclude Mr. Staller's opinions, the Court holds that Plaintiffs cannot, as a matter of law, recover emotional distress damages under Title II of the ADA following the Supreme Court's decision in

*Cummings*. While the Court acknowledges that the Third Circuit has yet to address this issue, the Court is persuaded by the reasoning of the Second and Eleventh Circuits in the only two circuit court decisions that have ruled on the issue in the wake of *Cummings*. *See Doherty*, 101 F.4th at 173–75; *A.W.*, 110 F.4th at 1314–15. Both rejected the precise arguments that Plaintiffs are making. *See Doherty*, 101 F.4th at 174–75 (rejecting the argument that *Cummings*, which explicitly dealt only with Spending Clause legislation, including the Rehabilitation Act, does not apply to the ADA because the ADA is not Spending Clause legislation, based on the Supreme Court's rejection of that same argument in the context of punitive damages in *Barnes v. Gorman*, 536 U.S. 181 (2002), where the Supreme Court held that punitive damages were not recoverable in private Title VI actions and, therefore, "it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act"); *A.W.*, 110 F.4th at 1314–15 (holding that "*Barnes* requires us to read the remedies available under Title II of the Americans with Disabilities Act as mirroring the remedies under Title VI of the Civil Rights Act of 1964," which are the same remedies available under the Rehabilitation Act); *see also N.S. v. W. Pa. Sch. for Blind Children*, No. 24-cv-0219, 2024 WL 4266550, at *10 (W.D. Pa. Sept. 23, 2024) (dismissing claims for emotional distress under Section 504 and the ADA based on *Cummings*, *Barnes*, and *Doherty*); *A.T.*, 2023 WL 1453143, at *3 ("[A]lthough the ADA is not Spending Clause legislation, its text expressly incorporates the remedies available under a statute that is—the [Rehabilitation Act]. Plaintiffs may therefore not seek compensatory emotional damages under the ADA in this action.").

Last, the Court agrees with Plaintiffs that, the unavailability of emotional distress damages notwithstanding, evidence of Alex's emotional distress and migraines is relevant to the material factual issues of the efficacy of S2C as a means of communication for Alex, the efficacy

of other communication supports that the District provided to Alex, and the District's knowledge

when it refused to allow Alex to use S2C at school, given the District's awareness of Alex's

declining mental health and worsening migraine headaches at that time. (*See, e.g.*, Doc. No. 64-

60 at 2 (in an email to the District, Mother explaining that after learning that the District's

planned S2C training session in May 2018 would not move forward, Alex was "devastated" and

told her "he felt hopeless because of the training being cancelled," and that "[t]he series of delays

in getting S2C training . . . have come at a great cost to Alex both academically and

emotionally"); Doc. No. 64-67 at 2–3 (in an email to the District, Mother explaining that Alex

"clearly came away from [his S2C training session with District staff in September 2018] feeling

despondent about how he believes [the District] view[s] his capabilities"); Doc. No. 64-76 at 2–3

(November 5, 2018 letter from Alex's psychiatrist, Dr. Ghaffari, recommending that Alex should

not return to school without a letterboard and communication partner because doing so "will lead

to further deterioration of his mental well-being and lead to worsening aggression and self-

injurious behaviors").) *See Le Pape*, 103 F.4th at 981; *S.H.*, 729 F.3d at 265; Fed. R. Evid. 401.

The Court acknowledges the District's concern about the prejudicial nature of this evidence, but

the Court finds that a limiting instruction will cure any risk of unfair prejudice under Rule 403.

Accordingly, the Court denies the District's motion but directs the parties to meet and confer and

propose a limiting instruction on the unavailability of emotional distress damages consistent with

the Court's ruling.

### 3.    Motion to exclude all facts or opinions not presented to or known by the District as of December 20, 2018

The District moves to exclude evidence "of facts or opinions which were not presented to

or known by the District as of December 20, 2018," "the latest date on which the District denied

Alex the use of S2C," as irrelevant under Federal Rule of Evidence 401 to the issue of whether

24

the District acted with the requisite deliberate indifference for intentional discrimination.  (Doc. No. 131-1 at 1–3.)  The District also argues this evidence should be excluded under Federal Rule of Evidence 403 because such evidence "will cause the jury to base its decision on something other than whether, at the time [the District] made its decision, it had actual knowledge that a harm to Alex's federally protected rights was substantially likely and whether the district failed to act on that knowledge."  (*Id.*)  Plaintiffs counter that the District's proposed cutoff date is "arbitrary" because "Alex was qualified to participate in the District's programs, services, or activities through the school year when he turned 21 years old—December 29, 2021."  (Doc No. 140 at 4.)  Plaintiffs further argue that their evidence after December 20, 2018 pertains to the "most material" factual issue of the efficacy of S2C for Alex, which is relevant to determine whether the District violated the ADA's effective communication requirement.[3]  (*Id.* at 4–5.) Plaintiffs also claim that this evidence is relevant to show deliberate indifference because it shows that the District "had access to the opinions of medical, behavioral, and communication experts on the efficacy of the letter board" between October and December 2017, when the District failed to respond to Plaintiffs' three requests for a neutral third party to assess Alex using S2C.  (*Id.* at 5–6.)

The Court is not convinced that evidence after December 20, 2018 is relevant to the issue of deliberate indifference, as Plaintiffs seem to be arguing that such evidence goes to what the District could have known about the efficacy of S2C when it decided to deny Plaintiffs' request to incorporate S2C at school for Alex, which is not an appropriate consideration for deliberate

---

[3] Plaintiffs also point out that the District "offers no argument as to why its evidence after December 20, 2018," including expert opinions, articles, and position statements created after that date, "is relevant but [Plaintiffs'] evidence is not."  (Doc. No. 140 at 3.)  But during oral argument, the District conceded that if the Court were to grant the District's motion, the District "obviously" would not offer any of its own evidence that postdates December 20, 2018.  (*See* Dec. 16, 2024 Hr'r Tr. 44:8–16, 46:13–20.)

indifference. *See S.H.*, 729 F.3d at 266 n.26 ("Deliberate indifference requires *actual* knowledge; allegations that one would have or should have known will not satisfy the knowledge prong of deliberate indifference." (internal quotation omitted)).  However, the Court agrees with Plaintiffs that such evidence is relevant to the material factual issue of the efficacy of S2C for Alex. *See Le Pape*, 103 F.4th at 981; Fed. R. Evid. 401.  And, the Court finds that the probative value of this evidence is not substantially outweighed by the dangers of unfair prejudice, confusing the issues, or misleading the jury under Rule 403, because, as the District acknowledges, the District is prepared to introduce its own evidence after December 20, 2018 relevant to the issue of the efficacy of S2C for Alex, including the expert opinions of Dr. Shane.  Moreover, the Court's jury instructions will clarify the appropriate standard for deliberate indifference.  Accordingly, the Court denies the District's motion.

### 4.    Motion to exclude all evidence of other individuals who communicate with a letterboard

The District moves to exclude all evidence of other individuals who communicate with a letterboard as irrelevant under Federal Rule of Evidence 401 to the issue of whether the District was deliberately indifferent when it denied Alex the use of S2C at school and, relatedly, under Federal Rule of Evidence 403 because it "will confuse the real issue for the jury and cause the jury to base its decision on something other than whether" the District acted with deliberate indifference at the time it made its decision regarding Alex's use of S2C at school.  (Doc. No. 132-1 at 2–4.)  Plaintiffs respond that this evidence is relevant to the "most material fact at issue" in the case—the efficacy of the letterboard and communication partner for Alex—and to counter the District's argument that S2C is not an effective means of communication for anyone.  (Doc. No. 149 at 3.)  Plaintiffs further argue that this evidence is relevant to prove the District's deliberate indifference because Plaintiffs "told the District no later than October 2018 that

students at universities and colleges were communicating with a letter board and communication partner." (*Id.* at 3–4.)

The Court agrees with Plaintiffs that evidence of other individuals who communicate with a letterboard and communication partner is relevant to the issue of whether the District acted with deliberate indifference when it denied Alex's use of the letterboard and communication partner at school, given the District's awareness of at least some other individuals using S2C to communicate before ultimately deciding to preclude Alex from using S2C at school. (*See* Doc. No. 13-5, Sept. 10, 2019 Due Process Hr'g Tr. 472:3–15 (Michael Borsch, Alex's special education teacher, testifying that the S2C training that he and other District staff received in September 2018 included "an overall review of the program, how it came about, who did it, who's using it, [and] the success with it").) *See* Fed. R. Evid. 401. The Court also agrees with Plaintiffs that this evidence is relevant in light of the District's anticipated argument about the general invalidity of S2C as a means of communication, which is premised on evidence that both implicitly and explicitly references purportedly unsuccessful instances of other individuals using S2C or similar communication techniques. (*See, e.g.*, Doc. No. 144-3, Affirmative Expert Report of Dr. Shane.) For that same reason, the Court finds that Plaintiffs' introduction of evidence of other individuals who communicate with a letterboard and communication partner will not unfairly prejudice the jury or confuse the issues under Rule 403. *See* Fed. R. Evid. 403. The Court denies the District's motion.

## 5.    Motion for hearing pursuant to Federal Rules of Evidence 104 and 604

Last, the District moves for a hearing under Federal Rules of Evidence 104 and 604 "to determine the preliminary issue of whether Alex can testify using S2C and, if so, the parameters of how S2C will be used and whether the facilitator who will be working with Alex is properly

27

qualified . . . and unbiased." (Doc. No. 133 at 2.) Plaintiffs counter that the District is asking the Court to "'arrogate jury functions to the Court' . . . including deciding—'the most material fact at issue'—'the auxiliary aid's efficacy' . . . under the guise of Rule 104" (Doc. No. 139 at 3 (quoting *Le Pape*, 103 F.4th at 982–83)), and while the District's reliance on Rule 604 is "misplaced" because Alex's communication partner will not be "translating" for Alex at trial, Plaintiffs do not object "to the Court's limited voir dire of Mr. [Tom] Foti [(Alex's intended communication partner at trial)] on his ability to verbalize the letters Alex points to and possible bias and motives for verbalizing a letter other than the one Alex points to (*id.* at 6).

As the Court held when the Court denied the District's prior request for a hearing under Rule 104 to resolve a similar preliminary issue within the context of expert opinions (*see* Doc. No. 170), the Court cannot make a determination as to the "the preliminary question of whether the use of S2C is sufficiently reliable that by using it the Court is assured that Alex's own thoughts are being communicated to the jury" because to do so would be to necessarily decide what the Third Circuit has determined to be "the most material fact at issue" for the factfinder in this case—the efficacy of S2C as a means of communication for Alex. *See Le Pape*, 103 F.4th at 982. Further, the Court did hold a hearing on December 2, 2024, during which the parties and the Court conducted voir dire of Mr. Foti and Alex, with Mr. Foti and later, Alex's Mother, serving as his communication partner. (*See generally* Dec. 2, 2024 Hr'g Tr.)

For these reasons, the Court denies the District's motion. However, as discussed during the final pretrial conference and indicated in the Court's recently issued *Daubert* opinion, the parties are directed to meet and confer and submit a proposed limiting instruction on the jury's role to determine the efficacy of S2C as a communication method for Alex and the impact that

determination has on the jury's consideration of evidence derived from Alex's communications through S2C, including Alex's testimony at trial.  (*See* Doc. No. 170 at 45 n.12.)

**III.    Conclusion**

For the reasons set forth above, the Court grants in part and denies in part Plaintiffs' motions *in limine*, grants in part and denies in part the District's motions *in limine*, and denies the District's motion for a hearing.  An appropriate Order follows.